THE STATE OF IOWA, Appellee, v. WILLIAM McKINNON, Appellant.

Criminal law: RAPE: EVIDENCE. Where the imbecility of a prosecutrix for rape was clearly established, the admission of evidence that she was odd, cried without apparent reason and was lacking in will power, was not prejudicial.

Same: EVIDENCE: CROSS-EXAMINATION. Where a relative of the prosecutrix had testified to her imbecility and that she was present at his home when the defendant, accused of rape, called and took her away in his buggy, the question of whether he knew at the time that defendant had paid some attention to her, was properly excluded on cross-examination; as the witness had no control over the prosecutrix, and even if he had he might rightfully have assumed that the intentions of defendant were honorable.

Same: IMMATERIAL EVIDENCE. Where a witness had testified on direct examination to the age at which the prosecutrix had learned to walk, and that she had never learned to talk very plainly, his cross-examination as to the age her brothers and sisters learned to walk and talk, was properly excluded as immaterial; and even if material it was within the discretion of the court to exclude it as improper cross-examination.

Same: INSTRUCTIONS: DEFINITION OF TECHNICAL TERMS. Where a criminal statute involves technical terms not within the common use and understanding of the jury, it is incumbent upon the trial court to define the same, so that the jury may clearly understand their meaning and import; but the term "effectual resistance," as used in the statute with reference to carnal knowledge of an imbecile female, has no technical legal meaning, as distinguished from its ordinary meaning, and a requested instruction defining the same was properly refused.

Same. A requested instruction that the term "effectual resistance" means simply ordinary, usual and fair resistance, was properly refused; because implying an element of moderation or acquiescence in the quality of resistance which a normal woman would put forth, not contemplated by the language of the statute.

**Same:** IMBECILITY OF PROSECUTRIX: STATUTORY OFFENSE. On a prosecution for rape committed on an imbecile female, it is only necessary to show that her imbecility was such that effectual resistance was impossible; and when such imbecility is shown it becomes immaterial whether she did in fact resist, or what other circumstances aided in her pollution.

**Same:** REQUESTED INSTRUCTIONS. Where counsel desires an instruction which will aid the jury in understanding a statute difficult to render plainer by definition, it becomes his duty to formulate and present a proper instruction; it is not sufficient that attention is directed to the subject by an improper request to cast that duty upon the court.

**Argument of counsel:** MISCONDUCT. The conduct of attorneys in the course of their argument to the jury is peculiarly within the power and 'discretion of the trial court. In the instant case certain remarks of the prosecuting attorney in his closing argument are held to have been sufficiently dealt with by the sustaining of objections thereto.

**Same.** The conduct and actions of defendant in the presence of the jury, and while the complaining witness in a prosecution for rape was giving her testimony, may be the subject of fair and reasonable comment in argument to the jury, the propriety of which is peculiarly within the observation of the court.

**Same.** The appellate court will not review alleged misconduct in argument to which no exception was taken upon the trial; it is only those matters specifically brought to the attention of the trial court in some proper manner that will be considered.

**Same.** Whether the closing argument by the state was fairly responsive to that of counsel for defendant, even though beyond the record, is peculiarly a question for the trial court.

**Same.** Where the defendant did not ask for a new trial on the ground that the prosecuting attorney in his closing argument referred to the fact that he did not take the stand in his own defense, the question of whether such statement was a violation of the statute prohibiting such a reference was not for consideration on appeal.

*Appeal from Hancock District Court.*—HON. J. F. CLYDE, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

INDICTMENT for rape under the provisions of section 4758 of the Code. There was a verdict of guilty and judgment entered thereon. Defendant appeals.—*Affirmed.*

*John Hammill* and *Senneff, Bliss & Witwer,* for appellant.

*C. R. Wood* and *J. E. Wichman,* for the State.

EVANS, J.—The charging part of the indictment is as follows: "The said William McKinnon on or about the 10th day of September, in the year of our Lord one thousand nine hundred and eleven, in the county aforesaid, did willfully, unlawfully, and feloniously ravish and carnally know one Jessie Glanville, then and there being, the said Jessie Glanville being then and there a girl of the age of twenty years, and naturally imbecile and weak in mind, and deficit in under-standing, to such an extent that she did not know or comprehend the nature of the act, and naturally of such imbecility of mind and weakness of body as to prevent her making effectual resistance to said defendant and his unlawful act, contrary to and in violation of law and against the peace and dignity of the State of Iowa." In support of the indictment the state offered evidence tending to show that the prosecuting witness was naturally of such imbecility of mind as to come within the classification of the statute. The defendant was not a witness in his own behalf.

I. On behalf of the state, the illicit intercourse was proved by the testimony of the prosecuting witness and by corroborative evidence which was all but conclusive. On the question of the mental condition of the prosecuting witness, many witnesses, both expert and nonexpert, testified. All such testimony tended to show that the prosecuting witness was not normal in her mental development. She had considerable in-

telligence and ability to learn in school, but in all her association with others she was backward and nonresisting. She lacked initiative both in conversation and conduct. She seldom spoke except to answer questions, such answers being usually "Yes" or "No." She was industrious and obedient to any request for assistance, but her conduct was usually set in motion by some one else. She was twenty years of age at the time of the alleged offense. Her bodily condition also was abnormal. Her eyes "rolled." She had a defective spine, and walked with a "shuffling gait." All the testimony tended to show that she lacked materially in mental capacity and in resisting power. The defendant called as witnesses three medical experts, all of whom had previously made an examination of the prosecutrix. We quote from their testimony as follows:

Dr. Cole testified: I would class her on the dividing line between a low mentality and an imbecile. She had the will power to make the ordinary resistance in proportion to her intellectual power. I think she is somewhat below the average girl of her age in intelligence. She has the will power between the highest class of imbecile and the low average person. I don't think she would have the same power to distinguish between right and wrong that a girl of average mentality would have. I think her mental defects would lead her to yield to the desires and the importunities of a man asking her for sexual intercourse easier than a girl of higher mentality. Imbeciles can't resist temptations with the same degree that a person of average mentality can. The ability to converse is not always a true test of imbecility. Her physical defects are more abnormal that her mental defects. The symptoms point very strongly to a degeneration in one of the cords of the spinal column. She has enlarged tonsils and adenoids which makes it difficult for her to breathe, and causes mouth breathing.

Dr. Burke testified: She is below the average in intelligence and brightness for a girl of her age. You would probably have to class her as an imbecile. She'd be a person with a weakened intellect, but she'd be above the average of intellect of an imbecile. She'd be a high-standard imbecile. Her ability to

choose her desires would be limited according to the amount of her intellect. The fact that she stated when asked to have sexual intercourse that she was afraid she would get in a family way would indicate reasoning power and intelligence, and the fact that she refused to tell her parents would indicate the same thing. She has many physical defects. (Cross-examination) : My entire testimony is based on the examination of last night. An imbecile is a person with an impaired mentality and intellect by various degrees. Most of her answers that she made us were in monosyllables. Jessie Glanville didn't have the resisting power of the average girl of her age.

Dr. Irish testified in accord with the two preceding witnesses, and also: ''I think her physical defects exaggerate her mental defects.''

The evidence as a whole leaves no room for reasonable doubt as to the imbecility of mind of the prosecuting witness to a noticeable degree. The defendant worked at the home of the prosecutrix for about three months prior to the illicit relation charged. He had also boarded there a short time in the previous fall. He appears to have recently come into the neighborhood. His previous history is not disclosed in the record.

Many points relating to the admission of testimony are relied upon for reversal. The testimony of the witnesses is interspersed with many statements of conclusion or opinion as to the mental condition of the prosecutrix,

1. CRIMINAL LAW: rape: evidence.

and the claims of error in the admission of testimony are directed largely to these points. One witness testified that she was ''odd acting''; another that she cried much without apparent reason; others that she appeared to lack will power. We cannot undertake to pass now in detail upon these specific objections. The state of the evidence on both sides as to the imbecility of the prosecuting witness was such as we have sufficiently indicated above that no possible prejudice could result from the expressions of opinion complained of, even if they were technically improper. We are of the opinion, also, that as to

many of such opinions at least there was sufficient basis for their admission under the rules heretofore announced by us. *Reininghaus v. Association,* 116 Iowa, 364; *State v. McKnight,* 119 Iowa, 79. On the question of opinion as to will power, the medical evidence introduced by the defendant shows that imbecility of mind reduces the will power. There is nothing in the opinions of the medical witnesses of the state inconsistent with this view, and we see no ground of prejudice at this point.

II. Frank Glanville was a witness for the state. He was an uncle of the prosecutrix. She was at his house the Sunday afternoon of September 10th, when the defendant called for her. He testified briefly as to the circum-

2. SAME: evidence: cross-examination. stances of such call, and that the prosecutrix went away with the defendant in his buggy. On cross-examination, defendant's counsel put to him the following question: "You knew from what you had heard and was conscious of the fact that Sunday when he came there that he had gone with her some?" The trial court sustained an objection to this question on the ground that it was not cross-examination and hearsay. Complaint is made of this ruling. It is contended that an answer to this question would have tended to show conduct on the part of this witness inconsistent with his present testimony as to the mental weakness of the prosecutrix. It is argued that, if he had believed that she was mentally weak, he would not have permitted her to go with the defendant, and the fact that he did permit her to go with him indicated his belief in her normal mental condition. The argument assumes too much. The question was not a very important one, and was well within the discretion of the trial court to permit or refuse. The witness had no control over the prosecutrix. Even if he had been her father, he had a right to assume that the intentions of the defendant in calling for her were honorable. If they had been honorable, they might have been an aid to her recovery of normal mental condition. What is here said will

apply also to appellant's similar complaint as to the testimony of the wife of this witness.

The defendant complains, also, of the refusal of the court to permit him to cross-examine this witness as to the comparative condition of her brothers and sisters. The witness testified on direct examination that the prosecutrix had not learned to walk at eighteen months, and that she had never learned to talk plainly. He was asked on cross-examination how old the brother Vergil was when he learned to talk and walk; also how old the brother Howard was when he learned to talk and walk; and how old the other sister was when she learned to talk and walk. The trial court sustained objections to all these questions. Clearly, they were not cross-examination. The trial court held them to be immaterial.

**3. SAME: immaterial evidence.**

We think in the state of the record the ruling was proper. We can see no aid to the defendant in the inquiry in this case to be had by any answer that might be given to the questions propounded. If it should appear that the other children were defective also, it could not aid the defendant. Neither would it aid him to show that they were not defective. If it were shown that they were as old as the prosecutrix when they learned to walk and talk, and were now mentally normal, it would not contradict or explain away the present condition of the prosecutrix. Even if the evidence were material for the defendant, its exclusion on the cross-examination was clearly within the discretion of the court.

III. Perhaps the most strenuous complaint of the defendant is that the trial court failed to define to the jury the statute under which he was indicted. Section 4758 of the Code is as follows: "Carnal knowledge of imbecile or insensible female. If any person unlawfully have carnal knowledge of any female by administering to her any substance, or by any other means producing such stupor or such imbecility of mind or weakness of body *as to prevent effectual resistance*, or have such carnal

**4. SAME: instructions: definition of technical terms.**

knowledge of an idiot or female naturally of such imbecility of mind or weakness of body as to prevent effectual resistance, he shall be punished as provided in the section relating to ravishment.'' At the request of the defendant, the trial court gave to the jury the following instruction: ''Before you would be warranted in finding the defendant guilty, you must be convinced beyond à reasonable doubt that the defendant did have sexual intercourse with prosecutrix as alleged, and further convinced beyond a reasonable doubt that Jessie Glanville was at such time of such imbecility of mind as to prevent effectual resistance.'' The defendant at the same time asked the trial court to give the following instructions:

(5) Even though you should find that Jessie Glanville was an imbecile or weak-minded, or below the ordinary girl in intelligence or will power, you would not be warranted in convicting defendant, unless such imbecility or weakness was of such an extent that by reason thereof she was prevented and unable to offer such resistance as would ordinarily be offered by the average girl of her age.

(6) Even though you should believe from the evidence that Jessie Glanville was of weak mind, but you should further find that she permitted defendant to have sexual intercourse with her because of her passions having been aroused, not induced by weakmindedness, it would be your duty to find the defendant not guilty.

(7) Effectual resistance as mentioned in the statute does not mean such entire resistance as would prevent the defendant from having sexual intercourse with her, but it means simply ordinary, usual, and fair resistance.

These latter were refused by the trial court. The point here made is not free from difficulty. It undoubtedly devolves upon the trial court to define the terms of an indictment or statute when such definition is necessary to their fair understanding by the jury. *State v. Clark*, 78 Iowa, 492; *State v. Brainard*, 25 Iowa, 572. This is particularly so when such technical terms are involved as are not within common use

and understanding of jurors. The words here involved are not technical in that sense. They have no technical legal meaning as distinguished from their ordinary meaning. They are as well understood by the ordinary juror as any synonym which could be substituted therefor. The word ''resistance'' could perhaps be more readily understood by a juror than the word ''effectual.'' Surely no aid to an understanding of the word ''resistance'' could be given by an attempted definition thereof.. According to Webster's International Dictionary, the only definition of which the word ''effectual'' is capable is ''adequate, effective, efficient.'' The term ''effectual'' is used in the statute as a word of emphasis. ''Effectual resistance'' is something more than mere resistance. The implication of the statute is that the normal, virtuous woman is capable of ''effectual resistance'' against assault upon her virtue.

Instruction No. 7 requested by the defendant, seeks to introduce an element of moderation into the quality of the resistance. For the word ''effectual'' it substitutes ''simply ordinary, usual, and fair.'' The statute itself deals not in such distinctions, nor does it imply any element of moderation or acquiescence in the quality of the resistance which a normal woman would put forth. The trial court therefore properly refused the requested instruction No. 7. Requested instruction No. 6 is equally objectionable on a slightly different ground. It was not incumbent upon the state to show that the passions of the prosecutrix were ''not induced by weak-mindedness.''

5. SAME.

It was sufficient to show that her imbecility of mind was such that ''effectual resistance'' was impossible. Such mental condition being shown to the satisfaction of the jury, then the prosecutrix was within the prohibited class, as much so as if she were under the age of consent or were an idiot. If she was of such imbecility of mind as to prevent effectual resistance, then it was immaterial whether she did resist or what other circumstances aided in her pollution. In such a case it is

6. SAME: imbecility of prosecutrix: statutory offense.

not for the jury to speculate whether the circumstances were such that she would have yielded her virtue, even though she had not been imbecile.

We see no great objection to the requested instruction No. 5, nor can we say that the court necessarily erred in refusing it. As respects the real question at this point, it amounted substantially to a repetition of the

7. SAME: requested instruc-tions.

statute and of the instructions already given by the court. The real question at this point was the mental condition of the prosecutrix, as already stated. We do not think the requested instruction would render the statute any plainer at that point. It is not wholly free from objection, in that it is so worded as to bear a possible objectionable construction, and as to direct the mind of the jury in the wrong direction. The question for the jury was not what an average girl ''would ordinarily'' do under the same circumstances. It is what she could do in a moral sense, and what she would be expected to do under the demands of her virtue. We think, therefore, that the court did not err in the refusal of any of the three requested instructions on this subject.

It is urged, however, that, even though the requested instructions were not proper, the subject was brought to the attention of the court in such a way as to impose upon it the duty of a proper instruction involving a definition of the statute. In view of the manifest difficulty and apparent impossibility of making the statute any plainer by definition, we think it devolved upon counsel to formulate and present a proper instruction which would aid in an understanding of the statute.

IV. In the closing argument to the jury, the prosecuting attorney used the following language: ''It is practically admitted that he committed this crime.'' This state-ment was objected to by counsel for the de-

8. ARGUMENT OF COUNSEL: mis-conduct.

fense as improper and unfair, and the objec-tion was sustained by the court. Later in the argument the following was said: ''While she is telling her

story of shame and disgrace, the defendant sits here smiling, grinning at her, apparently gloating over his conquest.'' This was objected to as ''improper, and as referring to something that cannot be in the record.'' No direct ruling was made upon this objection. Later in the argument the following occurred: ''They want you to say that he is a poor homeless boy; that he has got an imaginary father and mother somewhere. I think, if counsel would imagine a little more correctly, they would imagine a deserted wife and children somewhere instead of a father. Mr. Senneff: Just a moment; your honor, we object to such a statement as that as misconduct on the part of the state's attorney in closing argument, and ask that the jury be admonished not to consider such statement. Court: I think that objection should be sustained. The jury should not pay any attention to the statement made by counsel.'' Complaint is made of the statements in argument above quoted. The conduct of attorneys in the course of argument is a matter peculiarly within the discretion and power of the trial court. As to the first and third of the above complaints, we think they were fairly and sufficiently dealt with by the trial court. The last statement particularly purports to have been made in response to statements in argument by defendant's counsel. The trial court was in a position to know how much justification or mitigation there was for the purported response of the county attorney.

As to the second complaint, the propriety of the argument was peculiarly within the observation of the court. If the defendant conducted himself in the manner stated while the prosecutrix was upon the stand, he was necessarily subject to the observation of the jury, nor do we see any fair reason why reasonable comment upon such conduct might not be made in argument to the jury.

9. Same.

V. In the foregoing paragraph, we have confined our consideration to those parts of the argument of the county

attorney to which objection was made at the trial. Objections
are now urged here to considerable portions
10. SAME.        of such argument to which no objection ap-
pears to have been made in the trial court. The closing ad-
dress of the county attorney was taken down in full in short-
hand, and was included as part of the record. It is presented
to us in full. Several portions of it are singled out in argu-
ment, and urged upon our attention as grounds of reversal.
The record does not disclose that any of these passages were
made the basis of a complaint or a ground of motion for a
new trial in the court below. · The motion for a new trial
presented twenty-three grounds or paragraphs. The twenty-
third paragraph was as follows: "Misconduct of the prosecut-
ing attorney in closing argument." So far as appears in this
record, the only misconduct to which the attention of the
trial court was directed either by motion for new trial or
otherwise was that which we have already considered in the
preceding paragraph. The argument of the county attorney
cannot be brought here for original review. We will only
consider those portions thereof which were presented to the
consideration of the trial court. It is perhaps true that it was
not necessary for the appellant to renew repeated objections
to the argument of the county attorney. But it was necessary
for him in some way at some time to bring his specific com-
plaint as to alleged misconduct to the notice of the trial court.
The twenty-third paragraph of the motion for a new trial did
not purport to go beyond the objections and exceptions al-
ready made.

We may say, also, that such portions of the closing argu-
ment as are complained of purported to be in response to
statements of counsel for defendant in argument. Such argu-
ments were not presented. Whether such clos-
11. SAME.        ing argument was fairly responsive to what
had been said by counsel for defendants, even though beyond
the record, was peculiarly within the observation and knowl-
edge of the trial judge. It is sometimes true in the trial of

criminal cases that the county attorney is not the first offender along that line.   In view of the state of the record as indicated, we will not undertake to review further the closing argument.

It is suggested in argument that the defendant did not become a witness in his own behalf, and that he was therefore prejudiced by the statement that the crime was practically admitted. The defendant, however, asked an instruction on that subject, which the court gave. 12. SAME. If this statement of the closing argument should be deemed a violation of the provisions of section 5484, then defendant was entitled to a new trial for that cause alone under the provisions of such section. But the defendant did not ask for a new trial on that ground. That question is therefore eliminated from our consideration. The foregoing disposes of the principal matters pressed upon our attention.   The case is one of great importance.   We are satisfied upon the record that the defendant has had a fair trial, and that the evidence of his guilt is practically conclusive.

The judgment entered below is therefore *Affirmed*.