**STATE of Iowa, Appellee,**

v.

**Francis V. KELLOGG, Appellant.**

No. 94–1792.

Supreme Court of Iowa.

Jan. 17, 1996.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and John Bernau, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Francis Kellogg, appellant, appeals the judgment and sentence entered following his conviction on two counts of domestic abuse assault causing bodily injury. We reverse and remand for new trial.

## I. Factual and Procedural Background

In 1981, Johanna Bunting immigrated to the United States from her native Germany. Shortly thereafter she met the defendant, Francis Kellogg. At sometime later, Bunting and Kellogg began a romantic relationship and started living together. Although they continued living together for approximately eight years, at some point in time the physical or romantic component of their relationship ended. The couple still lived under the same roof and shared financial responsibilities, appliances, and household duties, but they maintained separate bedrooms.

On July 8, 1993, police were summoned to the Bunting–Kellogg residence by the defendant. When they arrived, the police found Bunting to have some minor injuries in the form of bruises, scabs, black eyes, and swelling. Kellogg did not appear to be injured. Both appeared to be intoxicated. Bunting claims her injuries were a result of Kellogg's kicking her with spurred boots and hitting her following his return from a night out drinking. Kellogg claims the bulk of her injuries were the result of her falling head first into the wall due to her drunken state, although he admits taking a swing at her in protection of a violin he was playing. He also alleges some of her scars were caused by a car accident in which she was involved several years ago. Kellogg was arrested for domestic abuse assault.

The State charged Kellogg with the crime of domestic abuse assault (an aggravated misdemeanor) in violation of Iowa Code sections 236.2, 708.2A(1) and 708.2A(2)(c) (1993).

Following presentation of the State's case in chief, the defendant moved for judgment of acquittal. The court granted the motion with respect to the aggravated misdemeanor charge which requires, in this case, that the assault be committed with intent to inflict a serious injury. The lesser offenses of domestic abuse assault causing bodily injury and simple misdemeanor assault were submitted to the jury. *See* Iowa Code §§ 708.2A(2)(a), (b).

Defense counsel requested a jury instruction to define the term "cohabiting" under the domestic abuse statute to include persons living together as "man and wife." The court denied this request. Defense counsel also objected to any instruction that included the term "living together" because it was not a part of the statutory definitions and would include mere roommates.

Instruction 20 submitted to the jury stated

"Family" or "household members" is defined to mean persons living together or cohabiting with each other under the same roof.

During deliberations, the jury sent a request for a "complete definition of cohabitation." The court notified counsel for the State and defendant, heard arguments, and concluded that a sexual relationship was not a prerequisite under the domestic abuse act. Defense counsel renewed his objection to use of the term "living together" and also objected to the court's proposed use of the word "dwelling" because this word was not used in the act. The court overruled this objection and gave the following instruction:

Instruction No. 30

The jury is instructed that cohabiting means dwelling or living together in the same place.

The jury convicted Kellogg of a serious misdemeanor domestic abuse assault, and he was sentenced to the maximum term of two consecutive one-year terms.

Kellogg appeals the trial court's refusal to submit a jury instruction stating that cohabitation under Iowa's domestic abuse statute requires proof of a sexual relationship and for incorrectly instructing the jury on the meaning of cohabitation. Kellogg also brings a claim for ineffective assistance of counsel. We reverse and remand for new trial.

## II. Scope of Review

 Trial court determinations regarding jury instructions are reviewed on appeal for errors of law. Iowa R.App.P. 4; *State v. Breitbach*, 488 N.W.2d 444, 449 (Iowa 1992). As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction. *Adam v. T.I.P. Rural Elec. Coop.*, 271 N.W.2d 896, 901 (Iowa 1978). Error in giving or refusing jury instructions does not merit reversal unless it results in prejudice to the defendant. *Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550, 555 (Iowa 1980). In criminal cases, the court is required to instruct the jury on the definition of the crime. *State v. Hoffer*, 383 N.W.2d 543, 548 (Iowa 1986). Generally understood words of ordinary usage need not be defined; however, technical terms or legal terms of art must be explained. *Henderson v. Scurr*, 313 N.W.2d 522, 523 (Iowa 1981); *State v. McKinnon*, 158 Iowa 619, 626–27, 138 N.W. 523, 527 (1913).

## III. Cohabitation

Iowa Code section 708.2A(1) provides for mandatory minimum sentences and enhanced penalties for domestic abuse assault. Section 708.2A(1) sets out, "For the purposes of this chapter, '*domestic abuse assault*' means an assault, as defined in section 708.1, which is domestic abuse as defined in section 236.2."

Section 236.2 defines domestic abuse as assault committed under any of the following circumstances:

a. The assault is between family or household members who resided together at the time of the assault.

b. The assault is between separated spouses or persons divorced from each other and not residing together at the time of the assault.

The code further defines "family or household members" as "spouses, *persons cohabiting*, parents or other persons related by consanguinity or affinity, except children under eighteen." Iowa Code § 236.2(4) (emphasis added).

This case was tried under the provisions of sections 236.2(2)(a) and 236.2(4). Under these sections the State was required to prove that defendant Kellogg and the victim Bunting were household members who "cohabited" while residing together. The crucial issue is the meaning of the term "cohabiting" and whether the jury was properly instructed as to its meaning.

 Because the code section fails to set out a definition of cohabiting, it is necessary to engage in statutory construction in order to determine the intent of the legislature with regard to the meaning of the term. In interpreting the meaning of a statute, this court must consider both the evil sought to be remedied and the purpose behind the statute's enactment. *Thompson v. State*, 524 N.W.2d 160, 162 (Iowa 1994); *State v. Williams*, 315 N.W.2d 45, 49 (Iowa 1982). We may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage. *Williams*, 315 N.W.2d at 49. When examining legislative intent, we must be guided by what the legislature actually said as opposed to that which it might have or should have said. Iowa R.App.P. 14(f)(13). In addition, when penal statutes are examined, they must be strictly construed, and we must resolve all doubts against the state and in favor of the accused. *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978).

## IV. Analysis

■ "Cohabiting" is generally defined as "[t]o live together as husband and wife," and "[t]o live together in a sexual relationship when not legally married." The American Heritage Dictionary 289 (2d College ed. 1985).

Black's Law Dictionary defines cohabitation as

> To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.

Black's Law Dictionary 236 (5th ed. 1979).

In this case, Johanna Bunting testified, and it is not disputed, that the parties at one time engaged in a sexual relationship. The question then becomes whether they are still cohabiting under the terms of chapter 236 when the sexual aspect of the relationship has ended, but they continue to live in the same home.

Originally enacted as a statute to protect spouses from abuse, chapter 236 has gradually been broadened to protect others from abuse occurring between persons in a variety of significant relationships. For example, in 1987, section 236.2 was amended to provide protection to persons divorced from one another. 1987 Iowa Acts ch. 154, § 1. In 1993, the legislature again expressed a policy of broadening coverage when it amended section 236.2 to provide assault between persons who are parents of the same minor child or have been prior family or household members. 1993 Iowa Acts ch. 157, § 1.

Although this court has not construed the meaning of the term "cohabiting" in the context of chapter 236, we have examined it in the scheme of dissolution proceedings. In *In re Marriage of Gibson*, 320 N.W.2d 822, 822 (Iowa 1982), we interpreted the term "cohabitation" as it appeared in a dissolution decree providing for maturation of an ex-husband's lien on his ex-wife's home upon her cohabitation with an unrelated male. In this case, the boyfriend stayed at the home approximately four nights of the week. He ate there quite often, and he occasionally brought clothes to change into. *Gibson*, 320 N.W.2d at 822–23. He, however, was not allowed to come and go at will, nor did he have his own key to the home. At all times he maintained his own separate residence where he paid rent, stored his belongings, and received mail. *Id.* In holding the boyfriend was not cohabiting in this case, we explained that although a "sexual relationship was ... a part of the intended definition, [it was] not the whole of it." There was also the requirement of dwelling in the residence. Cohabitation, then, had two requirements:

> First, the "unrelated male" was to live or reside in the dwelling. Second, the petitioner and the unrelated male were to live together in the manner of husband and wife.

Although the time the boyfriend spent in the dwelling was extensive, we explained this alone was not sufficient because "the time was not spent as a resident.... In simple terms he did not live there." *Id.*

In contrast to *Gibson*, this court in *In re Marriage of Harvey*, 466 N.W.2d 916, 917 (Iowa 1991), held the ex-wife was cohabiting with a boyfriend so as to merit termination of alimony payments under the terms of a dissolution decree. In *Harvey*, the boyfriend also spent three to four nights per week at the residence, subletting his own apartment to another tenant. He kept most of his clothing at the ex-wife's home, performed repairs to the home, cared for the children, and used the home as his address. *Id.* at 917–18. In contrast to the situation in *Gibson*, the boyfriend had unlimited access to her home. This fact, coupled with the nature of the couple's relationship, established cohabitation.

> The key is that Mark enjoyed complete and unlimited access to Kristina's home, whether she was there or not. In short, Mark lived there.

*Id.*

Although *Gibson* and *Harvey* were construing the definition of cohabitation in a different context, their holdings are instructive. In light of the legislative history of chapter 236 in its continued broadening to

protect other than man and wife relationships, we find that the trial court correctly refused the defendant's requested jury instruction that "cohabiting" meant "persons living together as man and wife."

Although properly declining the limiting interpretation of "cohabiting" requested by the defendant, the trial court, at the same time, gave the jury an instruction of "cohabiting" so broad that it exceeded the legislature's intent. As instructed by the court that "cohabiting" means "dwelling or living together in the same place," a jury finding that persons were mere roommates or lived in the same apartment building would be sufficient to support a conviction. We do not find any statutory evidence that the legislature intended this breadth of application from its enactment of the Domestic Abuse Act. Error was preserved on this issue. We therefore hold the court erred in giving its instructions on the meaning of "cohabiting."

## V. Factors in Determining Cohabitation

■ While proof of a sexual relationship between the parties is not required to establish cohabitation, it is nevertheless a factor for jury consideration. Two California cases are instructive on this point. In *People v. Ballard*, 203 Cal.App.3d 311, 249 Cal.Rptr. 806, 806 (1988), and *People v. Holifield*, 205 Cal.App.3d 993, 252 Cal.Rptr. 729, 731 (1988), the California Court of Appeals examined a domestic abuse statute similar to Iowa's in the face of a constitutional challenge by the defendant that the provisions were void for vagueness in that they failed to set out a precise definition of cohabitation. In *Ballard*, the court upheld a trial court's refusal to instruct the jury that cohabitation required a finding of sexual relationship. *Ballard*, 249 Cal.Rptr. at 810. *Ballard* then noted the purpose of the statute was to widen the protections previously granted by the "wife beating" statute to protect the large numbers of couples who live as husband and wife without the formal aspect of marriage. *Id.; see also Holifield*, 252 Cal.Rptr. at 732.

In *Holifield*, the California court further clarified this interpretation and explained the relationship at issue need not rise to the level of a de facto marriage. *Holifield*, 252 Cal.

Rptr. at 732. In doing so the court noted the particular difficulty involved in determining whether a relationship is equivalent to a marriage.

A police officer, district attorney, court and jury will have far less trouble determining whether a significant live-together relationship exists than determining whether the relationship is quasi-marital, particularly when there exists such uncertainty over which rights, duties and obligations of marriage are *ordinary* in our society.

*Id.* at 733. The court then approved the following indicia for the jury to consider (nonexclusively) in determining whether a couple was cohabiting:

1. Sexual relations between the parties while sharing the same living quarters.

2. Sharing of income or expenses.

3. Joint use or ownership of property.

4. Whether the parties hold themselves out as husband and wife.

5. The continuity of the relationship.

6. The length of the relationship.

*Id.* at 734.

■ These six indicia, being nonexclusive, accord with our prior interpretations of the term cohabitation and are also consistent with common understanding of the term cohabit and the intent of the legislature in enacting chapter 236 and its amendments. We adopt them as appropriate considerations for making a factual determination as to whether a couple is cohabiting under the umbrella of chapter 236. Because in the present case, the jury was instructed to consider solely whether the couple was living together at the time of the assault, the instruction was erroneous as a matter of law. The determination whether Bunting and Kellogg were no longer cohabiting at the time of the assault due to the change in their relationship is a peculiarly factual question which must be answered after examining the situation as a whole. It is appropriate for a jury to decide this. Because the instruction prejudiced the defendant, we grant him a new trial consistent with this opinion.

REVERSED AND REMANDED FOR NEW TRIAL.