# IN THE COURT OF APPEALS OF IOWA

No. 15-0144
Filed October 12, 2016

**JONATHAN LEE BREWER JR.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Jonathan Brewer appeals from the denial of his application for postconviction relief. **AFFIRMED.**

Karmen R. Anderson of the Law Office of Karmen Anderson, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DANILSON, Chief Judge.**

Jonathan Brewer appeals from the denial of his application for postconviction relief (PCR), contending his criminal trial and appellate counsel provided constitutionally defective representation. The district court rejected his claims. On appeal, Brewer asserts the district court erred in concluding trial counsel was not ineffective and the prosecutor's improper closing arguments were not prejudicial.

**I. Background Facts and Proceedings.**

The background facts are set out in detail in *State v. Brewer*, No. 11-1330, 2012 WL 3860745, at *1-2 (Iowa Ct. App. Sept. 6, 2012). In short, Darshelle Moore dated both Jonathan Brewer and Henry Palmer. *Brewer*, 2012 WL 386075, at *1. On February 13, 2011, Brewer burst through the door of Moore's apartment and threw gasoline on Palmer's grandson (Tyrone Cameron) and then threw the gasoline can at Palmer, who had come to investigate the loud noises. *Id.* Moore called 911, which resulted in police searching for Brewer and his vehicle. *Id.* Cameron's girlfriend, Renee Thompson, testified she was at the apartment but hiding when the door was forced open. *Id.* She also testified that earlier that night, Brewer was driving a truck and had rammed her vehicle with his own, stopped her vehicle, and then threatened Cameron. *Id.* Thompson and Cameron then drove away to Moore's building. *Id.* Palmer identified Brewer as the intruder at trial. The jury found Brewer guilty of first-degree burglary. *Id.* at *3-4.

Brewer sought a new trial based on newly discovered evidence—an affidavit from Moore, who did not testify at trial or appear for her deposition. *Id.*

at *6. The trial court held hearings on the motion, twice delaying the hearing until Moore was present to testify. While Moore's affidavit stated she "never stated to anyone involved in the trial that Jonathan L. Brewer was there or had anything to do with that crime," she admitted she "might" have called 911, and that if the 911 dispatcher told the police that Jonathan Brewer was involved in the burglary, that information would have come from the person who placed the 911 call. The court overruled the motion for new trial.

On appeal, we affirmed the conviction, concluding in part: "Given the strong evidence that Brewer was the person who broke into the apartment and doused Cameron with gasoline, we agree with the district court's assessment that Moore's affidavit was not newly discovered material evidence that would have changed the outcome of the trial." *Id.* at *7.

Brewer filed a PCR application, asserting trial and appellate counsel were ineffective and the prosecutor had engaged in misconduct. With respect to trial counsel, Brewer maintained counsel failed in several respects. Brewer contended counsel did not adequately investigate witnesses, did not adequately impeach witnesses with their deposition testimony, did not object to improper closing remarks by the prosecutor, and failed to object to the jury instruction defining the elements of first-degree burglary. He also asserted appellate counsel should have raised the additional issues on direct appeal.

Following a hearing, the district court rejected his claims of ineffective assistance of counsel. The PCR court addressed each of Brewer's claims. When summarizing, the court wrote:

The trial in this case was fair. [Brewer's] guilt was evident. His counsel was an experienced criminal lawyer, but she was limited by the violent and indisputable nature of her client's conduct. A lawyer, no matter how skilled, cannot change the inculpatory facts blatantly or undeniably created by the defendant's conduct.

The overwhelming evidence of [Brewer's] guilt precludes any conclusion that, even if any of his claims had merit, . . . the verdict would have been different.

Mr. Brewer has not met his burden to prove ineffective assistance of trial or appellate counsel. Nor has he shown how trial counsel's failure to do any of the things complained of amounted to a breach of an essential duty. He has failed to prove he was prejudiced by the alleged errors of trial counsel. Given the record, all other claims made are without merit, and, even if supported by the record, would probably not lead to a different verdict. The petition for postconviction relief is denied.

Brewer appeals.

## II. Scope and Standard of Review.

Generally, we review postconviction rulings on error. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). But we review claims of ineffective assistance of counsel de novo because they are based on constitutional guarantees under the United States and Iowa Constitutions. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). We apply a two-pronged test: "We ask if trial counsel breached an essential duty." *Id.* at 752. "We also ask whether prejudice resulted from said breach. The [applicant] has the burden of proving both elements by a preponderance of the evidence." *Id.* (citation omitted). We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [applicant] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S.

668, 689 (1984) (citation omitted)).  Moreover, if the applicant fails to prove either element, we need not address the other.  *Id.* at 754.

## III. Discussion.

Upon our de novo review, we agree with the district court's ruling that many of Brewer's complaints involve reasonable strategic decisions by trial and appellate counsel, and in any event, Brewer failed to prove any claimed error caused prejudice.  We thus do not address further Brewer's assertions that trial counsel conducted an inadequate investigation[1] and failed to impeach Thompson with her criminal history,[2] or that appellate counsel failed to raise the issues of prosecutorial misconduct and the impropriety of the marshalling instruction on burglary in the first degree.  And because we agree with the district court that Brewer did not prove trial counsel was ineffective, his claim that appellate counsel was ineffective in failing to raise the additional contentions is without merit.  *See State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004) (noting the "important" principle that "counsel has no duty to raise an issue that lacks merit").  We address only two of his many claims in more detail.

---

[1] As explained in *Ledezma*, 626 N.W.2d at 145, "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary.  Thus, the duty to investigate is not unlimited, and trial counsel is not required to interview every potential witness." (Citations omitted.)  Here, Brewer's claim related only to the failure to investigate a potential witness, but even if investigated and called as a witness, we do not believe the result of the trial was likely to have changed.

[2] While trial counsel testified she could not "recall a strategic reason for not doing so," and that it "may simply have been an error on my part," not to impeach Thompson with the witness's prior felony convictions, we agree with the district court's finding that Brewer cannot prove prejudice resulted in light of the strength of the other evidence against him.

***A. Jury instructions.*** Brewer contends that trial counsel was ineffective in failing to object to the marshalling instruction for first-degree burglary.[3] The jury was instructed:

> The State must prove all of the following elements of Burglary in the First Degree:
> 1. On or about the 13th day of February, 2011, the Defendant entered a residence . . . ;
> 2. The residence was an occupied structure as defined in Instruction No. 20;
> 3. Persons were present in the occupied structure;
> 4. The Defendant did not have permission or authority to enter the residence . . . ;
> 5. The Defendant did so *with the specific intent to commit an assault, theft or felony*; and
> 6. During the burglary, Defendant had possession of incendiary material.
> If the State has proved all of the elements, the Defendant is guilty of Burglary in the First Degree. If the State has failed to prove any one of the elements, the Defendant is not guilty of Burglary in the First Degree and you will then consider the charge of Attempted Burglary in the First Degree explained in Instruction No. 22.

(Emphasis added.)

Brewer contends the trial court was required to instruct the jury on the specific felony, theft, or assault Brewer intended commit, and trial counsel did not object to the instructions. The State agrees such an instruction is required, *see State v. Mesch*, 574 N.W.2d 10, 12 (Iowa 1997), but argues Brewer cannot

---

[3] Iowa Code section 713.1 provides:
> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

establish prejudice. As to this claim,[4] the PCR court concluded Brewer had "failed to establish that if trial counsel had objected to any of the instructions, the result of the trial would have been different."

In *Mesch*, in addition to the general instruction about burglary, the trial court had defined "assault" and "theft" in separate instructions. It did not, however, specify what felony the defendant had intended to commit. The court wrote:

> One of the elements of common-law burglary was that the breaking and entering be "with the intent to commit a felony" therein. In keeping with the common-law definition, we hold that the intent to commit a felony, assault or theft is an element of attempted burglary under section 713.2. The State is therefore required to specify the felony that the defendant intended to commit after the breaking and entering. To avoid confusion or speculation on the part of the jury, the district court must also instruct on the elements constituting the felony. Failure to do both is reversible error. *See State v. Gordon*, 560 N.W.2d 4, 6–7 (Iowa 1997) (holding court must leave to jury determination of elements of offense). *See also* Iowa Crim. J[ury] Inst. 1300.4 (1993) (indicating that burglary instruction must "describe" felony).
>         Here, over [the defendant's] objection, the district court simply instructed the jury in terms of the statute: [Defendant] attempted to enter "with the specific intent to commit a felony, assault, or theft." The district court was required to specify what felony [the defendant] intended to commit after the breaking and entering and the elements constituting such felony. Its failure to do so constituted reversible error.
>         Requiring the State to specify the felony is not onerous. While the State may not know what the defendant *actually* intended to do inside the dwelling, the State knows very well what *evidence* of intent it has. If the State has evidence of intent to commit certain felonies, and not others, it should request instructions only on those the evidence supports. The district court cannot submit instructions on felonies for which there is no evidence. . . . In addition, unless we require the State to specify the felony or felonies, [this defendant] and defendants similarly situated may be convicted on

---

[4] The PCR court characterized the claim: "Brewer complains that trial counsel breached an essential duty by failing to object to the jury instructions. Applicant misunderstands the elements of burglary and mischaracterizes the evidence and the court's instructions."

nothing more than proof of "who knows what she would have been up to had she entered."

*Mesch*, 574 N.W.2d at 14-15.

In *State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000), the court explained:

> To commit burglary in Iowa, a person unlawfully entering a premises must have the intent to commit a felony, assault or theft therein. *See* Iowa Code § 713.3. In *Mesch*, the trial court refused to instruct the jury as to which crime or felony an accused charged with burglary intended to commit. We reversed the defendant's conviction on the grounds that, unless the State limits its prosecution and requested jury instructions to theft or assault, the State must specify which felony it believes a burglar intended to commit. *Mesch*, 574 N.W.2d at 14. We also directed the court to instruct the jury as to the elements constituting the felony. *Id.*
>
> Generally, a court is required to instruct the jury as to the pertinent issues, the law, and the definition of the crime. *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996); *Henderson v. Scurr*, 313 N.W.2d 522, 525 (Iowa 1981). Particular terms need not be defined, though, if readily understood by persons of ordinary intelligence. Only technical terms or legal terms of art must be explained. *Kellogg*, 542 N.W.2d at 516.
>
> We need not decide, however, whether "theft" is a term readily understood by persons of ordinary intelligence or whether it is a legal term of art warranting a definitional instruction. Even assuming an instruction defining the crime of theft should have been given, we conclude the defendant suffered no prejudice from the absence of such an instruction here.

Thus, instructional error is not necessarily reversible error. *Oetken*, 613 N.W.2d at 686. And in *Oetken*, no reversible error was found because:

> In the context of the burglary statute and the facts presented herein, the evidence overwhelmingly indicated Oetken [the defendant] intended to commit theft by breaking into private residences, and stealing firearms, televisions, and other personal property. Oetken was not prejudiced by the jury's understanding of the term "theft." Nor, for the reasons set forth in the previous division, was he prejudiced by the jury's application of the commonly accepted meaning of "possession." It is therefore unnecessary for us to consider whether his attorney abrogated a duty by failing to request further instruction in these regards.

*Id.*

Here, we are not convinced Brewer's conviction was "on nothing more than proof of 'who knows what []he would have been up to had []he entered.'" *Mesch*, 574 N.W.2d at 15. The State made its theory clear in closing arguments—that Brewer had the intent to commit an assault.

> Now, there could be alternative theories of what [Brewer] was going to do. Was he going to commit attempted murder? Was he going to commit a willful injury? He's certainly committed an assault, right? I mean, pouring gasoline on a person is an assault.

We conclude, in the context of the burglary statute and the facts presented at the trial, the evidence overwhelmingly indicated Brewer intended to commit an assault after breaking and entering. *See State v. Clay*, 824 N.W.2d 488, 499-500 (Iowa 2012) (finding that even though trial counsel should have objected to prosecutor's misstatement of law with respect to intent to deprive, evidence showed defendant intended to permanently deprive owner of vehicle).[5] Consequently, we agree with the district court that Brewer failed to establish prejudice by counsel's failure to object to the erroneous instructions or appellate counsel's failure to raise the issue on direct appeal.

---

[5] The *Clay* court wrote:

> With this testimony in the record, we cannot say trial counsel's conduct in not objecting to the prosecutor's statement of law regarding the crime of theft is sufficient to undermine our confidence in the verdict. We say this because the only evidence in the record was the out-of-court statements regarding Clay's intent that he stole the vehicle and had the intent to take it to South Dakota. This evidence could lead a reasonable jury to conclude that Clay took the car for more than a joyride and is sufficient for the jury to find Clay had the intent to permanently deprive Overman of his vehicle. Therefore, this evidence does not undermine our confidence in the verdict, even if the court had properly instructed the jury that Clay had to have the intent to permanently deprive Overman of his vehicle in order to commit a theft.

824 N.W.2d at 499-500.

***B. Prosecutor's statements during closing argument.*** Brewer claims the prosecutor improperly vouched for the credibility a witness and injected his personal opinions in closing arguments. Brewer argues he was denied a fair trial by trial counsel's failure to object to prosecutorial misconduct and appellate counsel's failure to raise the issue on appeal. We will refer to Brewer's allegations as claims of "prosecutorial error."[6] *See State v. Schlitter*, 881 N.W.2d 380, 393-94 (Iowa 2016).

In analyzing Brewer's claims, we must first decide if prosecutorial error occurred. *See id.* at 394 ("We discussed the role of the prosecutor in criminal cases in [*State v.*] *Graves*, 668 N.W.2d [860,] 870 [(Iowa 2003)]. We also identified a multifactor test to evaluate the statements made during closing arguments in determining if there was misconduct and if that misconduct was

---

[6] In *Schlitter*, our supreme court stated:

> Prosecutorial misconduct includes those statements "where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct," as well as "those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." . . . *Prosecutorial error occurs "where the prosecutor exercises poor judgment" and "where the attorney has made a mistake" based on "excusable human error, despite the attorney's use of reasonable care."* . . . This distinction also conforms to the general definitions for misconduct and a trial error. *Compare Misconduct, Black's Law Dictionary* (10th ed. 2014) (defining misconduct as "[a]n attorney's dishonesty or attempt to persuade a court or jury by using deceptive or reprehensible methods"), *with Trial Error, Black's Law Dictionary* (defining trial error as "[a] mistake in or deviation from proper trial procedure during the presentation of a case to a jury"). Going forward, we adopt the ABA's recommendation on our review of prosecutorial behavior and distinguish between incidences of prosecutorial error and prosecutorial misconduct. A prosecutor who has committed error should not be described as committing misconduct.

881 N.W.2d at 393-94 (citations omitted) (emphasis added).

prejudicial.  *Id.* at 877-78.  These same factors easily translate to an evaluation of prosecutorial error.").[7]

> If prosecutor error occurred and defense counsel failed to object,
>
> we must then consider whether an attorney performing within the range of normal competency would have made an objection and/or requested a mistrial.  If there is no possibility that trial counsel's failure to act can be attributed to reasonable trial strategy, then we can conclude the defendant has established that counsel failed to perform an essential duty. . . .
>
> The final step of our analysis, should the defendant's claim survive to this point, will be to assess whether the record permits a determination of the prejudice prong of the ineffective-assistance claim.  In this regard, we will examine whether there is a reasonable probability the outcome of the trial would have been different had trial counsel performed competently.

*Graves*, 668 N.W.2d at 870.

It is the prosecutor's duty to assure the accused a fair trial.  *Id.*  And while a prosecutor is allowed "some latitude during closing argument in analyzing the evidence" and "may argue the reasonable inferences and conclusions to be drawn from the evidence," the prosecutor may not express personal beliefs.  *Id.* at 874 (citations omitted).

Brewer maintains the following statements by the prosecutor in closing were improper: "Renee [Thompson] is a very credible witness."  "I'm sure Tyrone [Cameron] was absolutely afraid [to identify Brewer.]"  Even if we were to agree

---

[7] The *Graves* court noted an isolated act of prosecutorial error may not amount to a constitutional violation.  668 N.W.2d at 880.

> "[I]t is the prejudice resulting from [prosecutorial error], not the [prosecutorial error] itself, that entitles a defendant to a new trial."  In determining prejudice the court looks at several factors "within the context of the entire trial."  We consider (1) the severity and pervasiveness of the [prosecutorial error], (2) the significance of the [prosecutorial error] to the central issues in the case, (3) the strength of the State's evidence, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the [prosecutorial error].

*Id.* at 869 (citations omitted).

the first comment constituted improper vouching for Thompson's credibility or the second comment constituted improper personal opinion, *see id.*, Brewer's criminal appeals counsel testified she reviewed the record, considered the best possible issues to raise, and excluded those she believed lacked merit, including a claim of prosecutorial error.[8] Appellate counsel must exercise sound discretion in selecting which issues to raise on appeal.

The prosecutor's statements were isolated and not particularly significant in contrast to the strength of Palmer's testimony identifying Brewer as the intruder who poured gasoline on his grandson and threw the gas can at Palmer. In the context of the entire trial, we agree that any failure to object did not prejudice Brewer and appellate counsel breached no duty in deciding not to raise the issue on appeal. *See Ledezma*, 626 N.W.2d at 143 (miscalculated strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel).

---

[8] Appellate counsel testified:

> If this is an isolated incident, the Court's not going to do anything about it. I mean, it has to kind of flow throughout the closing arguments. The other thing that the court would say about this is how it's done is couched into how it corroborates with other testimony and how her testimony is not really controverted by anything else.
>
> So as I said, it's done more as a comparison, you know, her testimony compared with everybody else. No one's really contradicting her. And then he says, you know, that makes her—and he submits that she's a credible witness. I mean, if he was doing it throughout the closing argument, you know, Renee's telling the truth, such-and-such is telling the truth, that would be more problematic. But this isolated incident of saying she's very credible and in comparison—and then, you know, compares the other testimony, that's not going to be a reversible error.
>
> Q. If [the prosecutor] were to make comments about other witnesses, such as Tyrone Cameron, being scared to come forward with the truth or other comments such as that, do you think that would make this issue more problematic? A. No, I don't think so.

The district court concluded Brewer failed to establish the requisite prejudice to prove trial and appellate counsel provided constitutionally deficient representation. Upon our de novo review, we agree. Therefore, we affirm the denial of Brewer's application for postconviction relief.

**AFFIRMED.**