# IN THE COURT OF APPEALS OF IOWA

No. 22-1848
Filed November 21, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SHAWN MICHAEL SMITH,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Linn County, Nicholas Scott, District Associate Judge.


    A defendant appeals his conviction for domestic abuse assault causing bodily injury. **AFFIRMED.**


    Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


    Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Shawn Smith, who told law enforcement that he and the victim of his crime "had been together for quite some time" and were in an "on-again/off-again relationship," appeals his conviction for domestic abuse assault causing bodily injury. He claims the evidence was insufficient to prove they were "family or household members," defined for the jury as "persons cohabiting with each other." We affirm.

Shawn Smith met Leslie in February 2021, when she was dating his friend. He soon started staying at Leslie's duplex—first as a friend and then later as something more. Leslie testified that about one month after they met, she and Smith started dating and having sex with one another. The relationship was bad from the beginning—"toxic, very controlling," and "up and down," according to Leslie. They kept living together until the end of May, when Smith assaulted Leslie because he was jealous that she hugged a friend. Leslie moved out a few days later. She testified that, as of June 9, she had ended her relationship with Smith. But on that day, Leslie went home after a day at the river with friends to find her kitchen "completely destroyed, glass shattered everywhere, . . . plates everywhere." Smith was there and told her that he did it because she had been out with a male friend.

Leslie moved again, this time to an apartment Smith didn't know about. In late February 2022, however, he contacted her about a dog they shared. Smith told Leslie that he couldn't keep the dog anymore, so she offered to watch the dog while he found a place to stay. But Smith "dropped the dog off and then never left," staying in Leslie's apartment for three or four days until February 28, when

he assaulted her again. Smith was not on the lease, but he ate and slept there. He even had his mail forwarded there. Smith testified that he kept belongings there, in the kitchen, bedroom, and bathroom. And, while Leslie did not think they were in a relationship again, she testified they "were sexual." Leslie thought that Smith "was planning on staying and getting back together like he did in the previous house."

On February 28, Leslie went to work and then out for drinks, during which she testified that Smith was "blowing up" her phone: "Constant text messages about asking where I was, telling me he was angry, telling me that I was, essentially, a whore. . . . And that I needed to come home right now." Leslie's phone died, and she got home a couple of hours later. An intoxicated Smith had shoved part of Leslie's sectional couch in front of her door, but she managed to get in. She told him to leave, but he refused, so she called the police.

Once they arrived, officers asked Leslie whether she was "in an intimate relationship" with Smith. She answered, "I guess." Leslie explained at trial that, to her, an intimate relationship was like "bubble baths, the flowers, that kind of intimate." And her relationship with Smith was not that—"it was more of a sexual relationship." Smith, however, told the officers that he and Leslie "had been together for quite some time" in "an on-again/off-again relationship," and "they would resolve all of their differences the next day" when they were both sober. With that information, plus Smith's use of a key code to access the apartment and his belongings there, the officers told Leslie that "they could not get him out of the apartment, since they concluded that he basically lived there."

Almost immediately after the police left, Smith assaulted Leslie outside the apartment building. Leslie called the police again, and Smith retreated into the apartment, where officers later found and arrested him.

On these facts, a jury found Smith guilty of domestic abuse assault causing bodily injury. Smith makes a limited sufficiency-of-the-evidence claim on appeal, arguing the "totality of the evidence does not support a finding that [he and Leslie] were family or household members for the purposes of the domestic assault statute." We review this claim for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023).

The jury was instructed that to find Smith guilty of domestic abuse assault causing bodily injury, the State had to prove the February 28 assault "occurred between family or household members who resided together at the time of the incident or persons who have been family or household members residing together within the past year but not residing together at the time of the incident." *See* Iowa Code §§ 236.2(2)(a), (d); 708.2A(1) (2022). The instructions defined "family or household members" as "persons cohabiting with each other." *See id.* § 236.2(4)(a). The concept of cohabitation was explained as follows:

> "Cohabiting" does not require a sexual relationship, but does require more than dwelling or living together in the same place. To determine if the Defendant and [the victim] were cohabiting at the time of the alleged offense, you may consider whether they had sexual relations while sharing the same living quarters; they shared income or expenses; they jointly used or owned property together; they held themselves out as husband and wife; the continuity and length of their relationship, and any other facts shown by the evidence bearing on their relationship with each other.

*See State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996) (approving consideration of six nonexclusive factors to determine whether persons are cohabiting within the meaning of chapter 236).

Smith argues "[t]he record did not support a finding of cohabitation" because some of the *Kellogg* factors were not met, and a sexual relationship alone is not enough. But these factors are nonexclusive. *See State v. Virgil*, 895 N.W.2d 873, 880 (Iowa 2017). "[W]hether two people were cohabiting is a question of fact for the jury." *Id.* at 881. And the "jury's verdict binds this court if the verdict is supported by substantial evidence." *Burns*, 988 N.W.2d at 370 (citation omitted). "Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (cleaned up). In that light, we find substantial evidence supporting the verdict.

From February or March through May or June 2021—which was within a year before the assault in question—Smith and Leslie were dating and in a sexual relationship while living together at Leslie's duplex. *See Kellogg*, 542 N.W.2d at 518 (including "[s]exual relations between the parties while sharing the same living quarters" and the continuity and length of the relationship as considerations for assessing the presence of cohabitation). The presence of these factors allowed the jury to rationally infer cohabitation. *See, e.g.*, *State v. Lee*, No. 17-0413, 2018 WL 1099273, at *2 (Iowa Ct. App. Feb. 21, 2018) (finding substantial evidence of cohabitation where defendant and victim shared a "dating relationship" for several months and moved in together, although defendant received his mail at another address and officers did not verify whether the defendant kept belongings at the

victim's residence); *State v. Joyce*, No. 15-0309, 2016 WL 1680271, at *3 (Iowa Ct. App. Apr. 27, 2016) (concluding motion for judgment of acquittal would have been meritless where the evidence "established a relationship appreciably more extensive than mere roommates"); *State v. Jasperson*, No. 03-0890, 2005 WL 291525, at *2 (Iowa Ct. App. Feb. 9, 2005) (concluding facts that defendant and victim shared "a boyfriend/girlfriend type relationship" and lived together was "sufficient to support an inference by the jury that [they] were not only residing in the same house, but were cohabiting as contemplated by Iowa Code section 236.2"); *State v. Jackson*, No. 99-1924, 2001 WL 23152, at *2 (Iowa Ct. App. Jan. 10, 2001) (finding substantial evidence of cohabitation based on "boyfriend/girlfriend" relationship and sharing of the same residence).

Turning to the revival of the sexual relationship between Smith and Leslie in February 2022, the jury could likewise rationally conclude they were cohabiting then. While Smith only started staying at Leslie's apartment a few days before the assault, she explained that he intended to resume their relationship and live with her like before. Smith ate and slept there, he had his mail forwarded there, he kept belongings there, and their shared dog also resided there. Cohabitation is defined to include "liv[ing] together in a sexual relationship when not legally married." *Kellogg*, 542 N.W.2d at 517 (citation omitted). That's what we have here. We accordingly find the evidence sufficient to support cohabitation.

**AFFIRMED.**