[No. A038125. First Dist., Div. Three. July 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES E. BALLARD, Defendant and Appellant.

COUNSEL

Robert K. Calhoun, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—A jury found appellant James Ballard guilty of felony infliction of corporal injury on a cohabitant (Pen. Code, § 273.5)[1] and of misdemeanor battery (§ 242); the jury was unable to agree on a charge of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)). Appellant admitted a prior separate prison term. (§ 667.5, subd. (b).) The court sentenced appellant to an aggregate term of three years' imprisonment.

Appellant contends that section 273.5 is vague, and, therefore, convicting him under its provisions deprived him of due process; that the court erred in its instructions on included offenses; and that the court abused its discretion in ruling that appellant could be impeached with a particular prior conviction. We find all of appellant's claims to be without merit and affirm the judgment.

*The Facts*

On October 24, 1986, Evelyn M. lived in a San Francisco apartment with June G., Frances P., and appellant. Ms. M. and Ms. P. had moved into the apartment together at the beginning of the year; Ms. G. had just moved in and was staying temporarily while her place was being remodeled. Ms. M. testified that she and appellant had been living together two years. She explained that although he had his own apartment, they were "together a lot." When asked if theirs was a "boyfriend-girlfriend" relationship, she answered, "Yes. We lived together in one bed."

On the day in question the four were in the apartment watching television and drinking whiskey. At about 7 p.m., suddenly and without provocation

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

appellant jumped up, kicked a chair aside, grabbed Ms. M. "real hard," took her dentures out of her mouth (stating he was going to throw them away), and said, " 'You're going down.' " Appellant picked her up and put her out an open window, hanging her upside down while he held her about the knees and threatening to drop her to the ground four stories below.

After Ms. M. managed to get back into the room and sit in a chair, appellant picked it up with her in it and slammed her on the floor, repeating this move twice. While this was going on, Ms. G. attempted to get appellant away from Ms. M., but he threw her into a rocking chair, hurting her arm and shoulder. Meanwhile, Rhonda F., Ms. M.'s daughter, called two or three times. Appellant kept hanging up on her, but Ms. M. finally let her know she wanted the police.

After appellant slammed Ms. M. into the floor, she asked to go to the bathroom. He told her to stay where she was and to urinate on the floor, which she did. Just then appellant turned to change a television channel; Ms. M. heard the police at the door and admitted them.

Ms. M. suffered several bruises from appellant's assaults upon her. Her testimony was corroborated by that of one of her roommates, her daughter, and the police. Officer David Tussey testified, inter alia, that both appellant and Ms. M. had clearly been drinking but that neither was incapacitated from the alcohol.

Appellant testified that on the day in question he and Ms. M. argued about a debt and that she gave him her dentures as security for her payment. Later Ms. M. angered him by twice stating that he was going to visit " 'slant-eyed whores' " in Oakland. He admitted pushing her "hard, but not hard enough to hurt her." He denied holding her out the window or forcing her to urinate in the living room. He said he had moved in with Ms. M. in February 1986, moved out after a "[c]ouple" of months, and lived in a hotel for four to five months, then moved back in with her, but slept mostly on a back porch or in a walk-in closet.

### *Validity of Section 273.5*

Section 273.5 provides in relevant part: "(a) Any person who willfully inflicts upon his or her spouse, or any person who willfully inflicts upon any person of the opposite sex with whom he or she is cohabiting, corporal injury resulting in a traumatic condition, is guilty of a felony . . . . [¶] (b) Holding oneself out to be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section. . . ."

Appellant contends that the term "cohabiting" is vague, that this renders section 273.5 void on its face, and that therefore he was deprived of due process when he was convicted of violating it. The principles to be applied to a void-for-vagueness attack are well established by the appellate courts and are fairly summarized as follows.

"Both article I, section 7, of the California Constitution and the Fourteenth Amendment to the United States Constitution declare that no person shall be deprived of life, liberty or property without due process of law. It has been recognized for over 80 years that due process requires inter alia some level of definiteness in criminal statutes. [Citation.] ■ Today it is established that due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citations.]" (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732], fn. omitted.)

" 'The fundamental policy behind the constitutional prohibition of vaguely worded criminal statutes was stated in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, at page 453 . . . : "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." [The California Supreme] court noted a further purpose of the prohibition in *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 . . . , where Justice Traynor stated, "A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it." [Italics omitted.] The generally accepted criterion is whether the terms of the challenged statute are "so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]' [Citation.]" (*People* v. *Smith* (1984) 35 Cal.3d 798, 809 [201 Cal.Rptr. 311, 678 P.2d 886].)

■ Slight theoretical uncertainty does not render a statute invalid. " 'The presumptive validity of a legislative act militates against invalidating a statute merely ". . . because difficulty is found in determining whether certain marginal offenses fall within . . . [its] language." ' (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081], [citation].) We are not obligated to 'consider every conceivable situation which might arise under the language of the statute' [citation], so long as it may be given 'a reasonable and practical construction in accordance with the probable intent of the Legislature' [citation]." (*People* v. *Smith, supra,* 35 Cal.3d at p. 810.)

■ Not every offender of every statute may be heard to argue vagueness. "[O]ffenders cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds [citation]." (*People* v. *Weaver* (1983) 147 Cal.App.3d Supp. 23, 36 [197 Cal.Rptr. 521].) "In examining statutes challenged on vagueness grounds, courts have looked not merely at the hypothetical cases to which the statute has uncertain applicability, but also at the act allegedly committed by the charged defendant. . . . '. . . [¶] Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that *his* [or *her*] contemplated conduct is proscribed.' [Citations.] . . . Thus plaintiffs cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].)

■ When we apply these principles to the case at bench, it is clear that appellant's allegation of vagueness must fail for several reasons. First, he is a "hard core violator" who cannot be heard to complain. Ms. M. testified that she and appellant had "lived together in one bed" for two years. Under any definition they were cohabiting, and the fact that applicability of section 273.5 to some other forms of living arrangements might be uncertain does not change that fact. In other words, as to appellant the statute is not vague, and that is all the due process to which he is entitled.

■ Second, a corollary to the above "hard core violator" rule is that "[A] statute is sufficiently certain if it employs words of long usage or with a common law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ.' [Citations.]" (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 60 [216 P.2d 859].) Even if appellant may be heard to attack the statute, under this rule the statute is clearly constitutional, since the term "cohabit" has been used in California statutes and decisions for at least 100 years and has an established common law meaning.

As early as 1888, a member of the Supreme Court observed that "living together and cohabitation mean the same thing." (*Sharon* v. *Sharon* (1888) 75 Cal. 1, 56, 61 [16 P. 345] (dis. opn. of Thornton, J.).) A few years later, in *Kilburn* v. *Kilburn* (1891) 89 Cal. 46, 50 [26 P. 636], the court stated that "by cohabitation is not meant simply the gratification of the sexual passion, but 'to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also.' [Citation.]"

■ After 1902, the appellate courts settled on the definition as stated that year in *Estate of Mills* (1902) 137 Cal. 298, 301 [70 P. 91]: "The word

'cohabiting,' . . . means the living together of a man and woman ostensibly as husband and wife. (1 Bishop on Marriage, Divorce, and Separation, sec. 1669, note 1.)" (See *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 609-614 [7 Cal.Rptr. 129, 354 P.2d 657], for a discussion of the derivation and meaning of the term.) This definition has been used extensively in civil litigation, especially where paternity is an issue under, for example, Civil Code section 7004 [child born within 300 days after "termination of cohabitation"] or Evidence Code section 621 ["the issue of a wife cohabiting with her husband" is presumed the child of the marriage]. And further, it is well settled that " 'Cohabitation means simply to live or dwell together in the same habitation; evidence of lack of sexual relations is irrelevant.' [Citation.]" (*Michael H.* v. *Gerald D.* (1987) 191 Cal.App.3d 995, 1006 [236 Cal.Rptr. 810].)

Numerous California statutes use the term "cohabit," or some variation of it, as well, all without stating a definition. For example, Civil Code section 43.4 eliminates the cause of action for "[a] fraudulent promise to marry or to cohabit after marriage." Civil Code section 51.3, dealing with senior citizen housing, refers to "spouse, cohabitant, or person providing primary . . . support." Civil Code section 4425 refers to persons who have "freely cohabited with the other as husband and wife," and section 4801.5 of the Civil Code refers to persons "cohabiting with a person of the opposite sex." (See also Civ. Code, §§ 7004 (see *ante*), 7017; Evid. Code, §§ 621 (see *ante*), 972 [marital privilege inapplicable where spouse charged with crime against a "cohabitant" of either spouse]; Pen. Code, §§ 266d [causing cohabitation when not married, for profit], 785 [jurisdiction for bigamy is where "marriage took place, or cohabitation occurred"], 1106 [proof of marriage and cohabitation in bigamy case].)

Section 13700, subdivision (b), provides: " 'Domestic Violence' is abuse committed against an adult or fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or a person with whom the suspect has had a child or has or has had a dating or engagement relationship." ■■ This provision of the legislation known as "Law Enforcement Response to Domestic Violence" is of particular interest because it promotes the same goal as the provision under consideration—the protection of persons from violence committed by their domestic partners or others with whom they have a significant relationship.

■■ Thus, under the rule recited in *Lorenson* v. *Superior Court, supra,* 35 Cal.2d at page 60, section 273.5 cannot be successfully attacked, because the term "cohabit" has a settled meaning which is clear under the law of this state. It follows that under the traditional two-part void-for-vagueness analysis discussed at the outset, this statute is valid as applied in this case

because it affords notice to appellant that his conduct was proscribed[2] and because there is a clear standard for law enforcement officials and for the courts to apply.[3]

 The original statute, former section 273d, was a "wife beating" statute.[4] The Legislature expanded its scope by the enactment of section 273.5, which was undoubtedly intended to remove the requirement that the parties be married. (See Note, *The Battered Wife's Dilemma: To Kill or To Be Killed* (1981) 32 Hastings L.J. 895, 904, fn. 58.) "We decline to frustrate the Legislature's clear and legitimate purpose in enacting the statute involved here. [Citations.]" (*Burg* v. *Municipal Court, supra,* 35 Cal.3d at p. 272.)

### Instructions

*Cohabitation.* It follows from the above discussion that the court properly refused to instruct the jury that a finding of cohabitation required a finding of sexual relationship. The court's answers to the jury's questions on the meaning of the term "cohabit" correctly stated that sexual relations were not required.

*CALJIC No. 17.12.* Appellant was charged in count I with violation of section 273.5, and in count II with violation of section 245, subdivision (a)(1). The jury found him guilty of the offense charged in count I, but could not agree on a verdict on count II. During its instructions to the jury the court first correctly defined each of the charged offenses, as well as their included offenses, without attempting to explain the verdict forms. For example, after defining all the offenses, the court said, "If the jury is not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged in Count I . . . and it unanimously so finds, it may convict him of any lesser offense if the jury is convinced beyond a reasonable doubt that he is guilty of such lesser related offense." An instruction about count II was given with substantially identical wording.

The court then told the jury that they had been instructed on "all the rules of law that may be necessary" to reach a verdict. After that the court said, "let me just briefly review with you the verdict forms in this case."

---

[2] Appellant's counsel stated at oral argument that appellant does not rely on the "notice prong" of the vagueness test, but on the "equal application" prong.

[3] We note, as urged by the People, that section 273.5 does not punish cohabitation; it punishes violence. "Cohabitation defines one of the protected classes, that is, unmarried cohabitors; it is not a constituent part of the prohibited activity." (*People* v. *Gutierrez* (1985) 171 Cal.App.3d 944, 951 [217 Cal.Rptr. 616] [upholding constitutionality of section 273.5 against equal protection attack].)

[4] Section 273d was and remains a "child beating" statute as well.

■ And then the court made the statements cited by appellant as error. The court told the jury that in the event they unanimously agreed that appellant was not guilty of the crime charged in count I, "then, and only then, would you consider the verdict form" for the included offense of battery. The court further told the jury that if they unanimously agreed that appellant was not guilty of the crime charged in count II, "then and only then would the jury deliberate upon the lesser offense to which this verdict form applies . . ." on the included assault charge.

These instructions followed the general form of CALJIC No. 17.12 (1984 rev.; see 4th ed. 1987 pocket pt.), which was drafted in an effort to effectuate the Supreme Court's holding in *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 519-520 [183 Cal.Rptr. 647, 646 P.2d 809], that a criminal defendant may be entitled to a partial verdict of acquittal on the greater offense even though the jury is deadlocked on an included offense. (Com. to CALJIC No. 17.12 (4th ed. 1987 pocket pt., pp. 80-81.) Appellant cites the form of the instruction used by the trial court as error because of the "do not consider" language not found in CALJIC. (He concedes that no prejudice occurred as to count II, on which the jury hung, but argues that the "do not deliberate" language impacted on the deliberations about count I.)

We have previously held that the "acquittal-first" language in CALJIC No. 17.10 is a proper reflection of the *Stone* holding. (*People* v. *Zwiers* (1987) 191 Cal.App.3d 1498, 1503 [237 Cal.Rptr. 123], review den. Aug. 20, 1987.) Although the "do not deliberate" language used by the court in relation to count II may be slightly more restrictive, it did not constitute error. As we stated above, the court below first instructed the jury on the law correctly defining the charged and included offenses. The language which appellant questions was used later and then only to explain how to use the verdict forms. The court instructed the jury to take its instructions as a whole, and we must presume they did so. (E.g., *People* v. *Zack* (1986) 184 Cal.App.3d 409, 416 [229 Cal.Rptr. 317].) Therefore, the jury must have understood that the court was stating that they should not consider using the verdict form, i.e., returning a verdict, for the included offense until they had decided to acquit of the greater offense.

This was in accordance with the holding and language in *Stone* (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 519), as we interpreted it in *Zwiers,* and which as yet has not been disapproved, though it remains unexplained, by the Supreme Court.[5] We find no error.

---

[5] We are aware that two published Court of Appeal decisions upholding the "do not consider" language have been ordered unpublished or have had review granted. (*People* v. *Jenkins* (Cal. App.) opn. deleted upon direction of Supreme Ct. by order dated Mar. 24, 1988 [see 196 Cal.App.3d 1410]; *People* v. *Kurtzman* (1987) 196 Cal.App.3d 728 [242 Cal.Rptr.

Even if error occurred, it was harmless. The "do not deliberate" language was used only as to count II, on which the jury hung and as to which the court declared a mistrial. The jury had little difficulty with count I. After they resolved their questions about the meaning of "cohabit," they took only about an hour to arrive at a decision. There is no indication in the record that the language of which appellant complains caused him any prejudice, and we find none.

### Impeachment

■ Appellant had suffered two prior felony convictions, one in about 1967 for auto theft, and one in 1980 for assault. The court held a hearing in accordance with *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. It then decided that both crimes involved moral turpitude, that the auto theft was more probative on the issue of honesty and credibility, and that under Evidence Code section 352, the probative value of the assault was outweighed by its prejudicial potential. The court therefore ruled that appellant could be impeached with the auto theft but that the assault would be excluded.

Appellant cites this ruling as an abuse of discretion. In light of the court's careful consideration of the facts and the law, we find this contention frivolous and not worthy of further discussion.

### Conclusion

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.

---

115], review granted on specified issue Feb. 18, 1988 (S003708).) This fact, of course, cannot be cited as disapproval of their holdings.