Filed 5/22/13  P. v. Jordan CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>TERRANCE JORDAN,<br><br>  Defendant and Appellant. | B236476<br><br>(Los Angeles County<br>Super. Ct. No. BA379876) |

APPEAL from a judgment of the Superior Court of Los Angeles, William C. Ryan, Judge.  Affirmed.

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Marc A. Kohm and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

A jury convicted Terrance Jordan of willfully inflicting corporal injury to a cohabitant (Pen. Code, § 273.5, subds. (a), count 1),[1] battery with serious bodily injury (§ 243, subd. (d), count 2), mayhem (§ 203, count 3), and assault with a deadly weapon (a knife) (§ 245, subd. (a)(1), count 4). In counts 1 through 3, the jury found Jordan had personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)). As to all counts, the jury found Jordan had personally inflicted great bodily injury (§ 12022.7, subdivision (e)).

In a bifurcated proceeding, Jordan admitted he had suffered a prior domestic violence-related conviction (§ 273.5, subd. (e)) and had served two separate prison terms for felony convictions (667.5, subd. (b)). He was sentenced to an aggregate state prison term of eight years. On appeal, Jordan challenges the sufficiency of the evidence to support his conviction for willfully inflicting injury to a cohabitant (§ 273.5, subd. (a).) Alternatively, Jordan contends the trial court committed prejudicial error by failing to instruct the jury sua sponte on the lesser included offense of misdemeanor battery on a cohabitant. We affirm.

**FACTUAL BACKGROUND**

On the evening of May 17, 2010, Latanya T. (L.T.), and Jordan, her boyfriend, were in her apartment. He had stayed with her the night before. They were joined by several others, one of whom Jordan mistakenly believed was L.T.'s former boyfriend. When L.T. attempted to explain, Jordan became upset. The two of them argued, and Jordan pulled out a knife from a kitchen drawer, but L.T. persuaded him to put it back.[2] Later, their argument resumed, and L.T. told Jordan, "Just get your things and go."

Jordan made a telephone call and after a while, a friend of the couple, Diamond Samuels, arrived. Samuels went into the bedroom, where L.T. was watching Jordan pack

[1]     Statutory references are to the Penal Code.

[2]     It is unclear from the record if there was anyone, other than L.T. and Jordan, in the apartment at this point.

up clothing he had removed from the closet. Samuels spoke to Jordan, urging him to reconcile with L.T. Jordan mumbled something, which L.T. interpreted as sarcasm. She responded by telling Jordan to "do what you feel," and he struck her in the face. Jordan continued hitting L.T.'s face and thigh until she fell into the closet. L.T. did not see anything in Jordan's hands, and she tried to grab them as he repeatedly swung at her. Samuels attempted to intervene by holding on to Jordan and talking to him, but Jordan did not stop hitting L.T. Suddenly realizing that Jordan was using a knife in the attack, Samuels screamed, "Oh my God. You stabbed her." L.T. ran to the bathroom mirror and saw blood on her face. Her tongue had been slit, there was a cut above her eye, and she was losing a lot of blood.[3]

Police and paramedics were called, and L.T. was transported to the hospital, where she received stitches to her tongue, right eye and thigh.

Jordan testified he had spent the night of May 16, 2010 with L.T. and then stayed at her apartment the next day to help her prepare for a get-together with friends. Jordan denied the assault had occurred and presented an alibi defense. Jordan claimed he had been with his mother on the afternoon of May 17, 2010 and did not return to L.T.'s apartment that evening. Jordan subsequently learned from L.T. that she had been injured while intervening in a fight between two men in her apartment.[4]

## DISCUSSION

### I. Substantial Evidence of Cohabitation

Section 273.5 provides in pertinent part that any person who willfully inflicts "corporal injury resulting in a traumatic condition" upon a "cohabitant" or former

---

[3] L.T. admitted at trial that she had lied at the preliminary hearing when she testified Jordan was not at her apartment on the night of May 17, 2010. L.T. also acknowledged having resumed her relationship with Jordan after the assault, because she loved him then, although they were no longer involved at the time of trial. At trial, Samuels denied seeing Jordan at the apartment or witnessing L.T. being assaulted.

[4] At trial, Jordan admitted having suffered two prior felony convictions.

cohabitant" is guilty of a felony.  (§ 273.5, subd. (a).)  Jordan's conviction was based upon the theory that he and L.T. were cohabitants when he assaulted her.  Jordan challenges the sufficiency of the evidence to support the element of cohabitation.

He first presents a historical overview of section 273.5 and urges us to reconsider current law on the statutory definition of cohabitation.  Jordan argues appellate courts have improperly expanded the meaning of the term beyond what the Legislature intended as persons who live together, and thus the evidence of cohabitation in this case is insufficient as a matter of law.  However, the current definition of cohabitation in the context of section 273.5 has been firmly established in a long line of California decisions. (See, *People v. Ballard* (1988) 203 Cal.App.3d 311; *People v. Holifield* (1988) 205 Cal.App.3d 993; *People v. Moore* (1996) 44 Cal.App.4th 1323; *People v. Taylor* (2004) 118 Cal.App.4th 11; *People v. Belton* (2008) 168 Cal.App.4th 432.)  Although these decisions suggest a broader view of cohabitation than Jordan believes is appropriate, none has been overruled by the Supreme Court, and the Legislature has not acted to narrow the meaning of the term in response to these decisions.  We thus see no reason to depart from these well-reasoned decisions.

Alternatively, Jordan contends even under the expanded definition of the term the record fails to establish he was cohabitating with L.T. under section 273.5.  We disagree and find substantial evidence that Jordan and L.T. were cohabitants when he assaulted her.[5]

---

[5]     To resolve a challenge to the sufficiency of the evidence, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.] The record must disclose substantial evidence to support the verdict -- i.e., evidence that is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility

4

The current definition of cohabitant, as used in section 273.5, is two unrelated persons "living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy." (*People v. Holifield, supra,* 205 Cal.App.3d 993, 1000; see *People v. Taylor, supra,* 118 Cal.App.4th 11, 18; *People v. Moore, supra,* 44 Cal.App.4th 1323, 1333; CALCRIM No. 840.) "The element of 'permanence' in the definition refers only to the underlying 'substantial relationship,' not to the actual living arrangement." (*People v. Moore, supra,* 44 Cal.App.4th at p. 1334.) "[S]ection 273.5 requires something more than a platonic, rooming-house arrangement." (*People v. Holifield, supra,* 205 Cal.App.3d at p. 999.) But, it does not require a person hold himself or herself out as "the husband or wife of the person with whom one is cohabiting." (§ 273.5, subd. (b).) Nor is proof of a sexual relationship required. (See *People v. Ballard, supra,* 203 Cal.App.3d 311, 319.)

As the jury was instructed in this case, the non-exclusive factors for determining whether unrelated persons are cohabitating within the meaning of section 273.5 include (1) sexual relations between the parties while sharing the same residence, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) the persons hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship. (CALCRIM No. 840; see also *People v. Holifield, supra,* 205 Cal.App.3d at p. 1001.) The jury was also specially instructed, "A [person] may cohabit simultaneously with two or more people at different locations, during the same time frame, if he [or she] maintains a substantial ongoing relationships with each [person] and lives with each [person] for significant periods." (*People v. Moore, supra,* 44 Cal.App.4th at p. 1335.)

---

issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Here, the evidence of the nature and extent of L.T.'s relationship with Jordan and their living arrangements came solely from their testimony. L.T. testified that Jordan was her boyfriend at the time of the attack; the two of them had been dating for one to two years, but did not live together. Jordan had been staying at her apartment every other night for about one year, and kept clothing and personal possessions there. L.T. also testified that she risked losing her "section 8" housing benefits if it were known that someone else was in her apartment for more than two weeks, so she did not want her neighbors to know that Jordan had been staying with her.

Jordan testified L.T. had never been his girlfriend. They had been involved in a purely sexual relationship from November 2009 through January 2011, during which he would visit L.T. in her apartment around the first of the month. Jordan had helped her pay rent and buy food throughout their relationship as payment for her sexual services.

This testimony was sufficient to establish that at the time of the assault, L.T. and Jordan had been living together in a substantial relationship that was characterized by permanence and sexual or amorous intimacy. (*People v. Moore, supra*, 44 Cal.App.4th at p. 1333.) The two of them had been in an ongoing sexual relationship for at least one year, during which Jordan spent half the time (every other night) at L.T.'s apartment, where he kept clothing and personal items. Jordan had helped defray the costs of L.T.'s living expenses during this period. From these facts, the jury could have reasonably found that, with the exception of holding themselves out as husband and wife, the couple had satisfied all of the factors to be considered cohabitants pursuant to CALCRIM No. 840.

Jordan's claim to the contrary notwithstanding, L.T.'s testimony that they did not live together, and had stayed in separate residences every other night does not preclude a finding they were cohabitants. Nothing in the language of the statute suggests the Legislature intended cohabitation to mean being present together in the same residence every night. Indeed, as the appellate court in *People v. Moore, supra*, 44 Cal.App.4th 1323, 1334 noted, the element of "permanence" for cohabitation refers only to the underlying "substantial relationship" not the living arrangement. (Cf. *People v. Taylor,*

6

*supra,* 118 Cal.App.4th at pp. 18-19 [conviction upheld where L.T. lived with the defendant in his car "for periods of time when she was homeless and had no other place to stay"]; quoting *People v. Moore, supra,* 44 Cal.App.4th at pp.1334-1335 [conviction upheld where defendant "maintained substantial relationship with two women in different locations"] and *People v. Holifield, supra,* 205 Cal.App.3d 993, 995 [conviction upheld where defendant and victim "had been seeing each other 'off and on' for four years[,]" defendant stayed in at least three other places for weeks at a time, took his possessions when he left, and did not have a key to the victim's residence]; see also *People v. Ballard, supra,* 203 Cal.App.3d 311, 319 [rejecting vagueness challenge to section 273.5 and concluding that the defendant and the victim had been cohabiting even though the defendant maintained his own apartment].)

In sum, the record amply supports a conclusion that Jordan and L.T. had a substantial ongoing relationship for a significant period when the assault occurred and were thus cohabitants within the meaning of section 273.5.

## II. Lesser Included Offense Instruction

Jordan alternatively argues the trial court committed prejudicial error by failing to instruct the jury, sua sponte, on the lesser included offenses of misdemeanor battery on a cohabitant.

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Blair* (2005) 36 Cal.4th 686, 745, that is, ""'"those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'"" (*People v. Valdez* (2004) 32 Cal.4th 73, 115.) This obligation includes the duty to instruct on a lesser included offense if the evidence raises a question whether the elements of the lesser included offense, but not the greater offense, are present. (*Ibid.*; *People v. Breverman* (1998) 19 Cal.4th 142, 154.) The existence of "'any evidence, no matter how weak'" will not justify instructions on a lesser included offense. There must be "'evidence that a reasonable jury could find persuasive.'" (*Breverman,* at p. 162.) In addition, the failure

to instruct on a lesser included offense in noncapital cases is "at most, an error of California law alone" requiring reversal only when "an examination of the entire record establishes a reasonable probability the error affected the outcome." *(Id.* at p. 165.)

Battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Section 243, subdivision (e)(1), provides: "When a battery is committed against . . .a person with whom the defendant is cohabiting, . . . or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment." The form of battery proscribed by this statute is a lesser included offense of corporal injury to a cohabitant as proscribed by section 273.5, subdivision (a). (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457; *People v. Jackson* (2000) 77 Cal.App.4th 574, 580.)

Even if Jordan's and L.T.'s testimony that they were not living together at the time of the assault was sufficient to support lesser included offense instructions on a violation of section 243, subdivision, (e)(1), Jordan was not prejudiced by the omission. As previously discussed, there was very strong evidence establishing the nature of their relationship as cohabitants. On the record here, there is no reasonable probability Jordan would have benefitted from those instructions. (See *People v. Breverman, supra,* 19 Cal.4th at p. 165.)

8

**DISPOSITION**

The judgment is affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.

WOODS, J.