Filed 8/29/13  P. v. McCoy CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B240331 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA089938) |
| v. | |
| DEWAYNE McCOY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joan Comparet-Cassani, Judge.  Modified with directions and, as so modified, affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Dewayne McCoy appeals from the judgment entered following his convictions for inflicting corporal injury upon a cohabitant, cruelty to a child, and assault by means likely to produce great bodily injury. The trial court sentenced McCoy to a term of 16 years in prison. McCoy contends the evidence was insufficient to support his conviction for inflicting corporal injury on a cohabitant. We order the abstract of judgment modified to correct a clerical error, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *People's evidence.*

On June 10, 2011, at approximately 5:15 p.m., eyewitnesses saw McCoy "beating up" Christine S. outside a laundromat located at 22nd and Pacific Avenues in San Pedro. McCoy punched Christine repeatedly with a closed fist, bloodying her face. After Christine fell to the ground, McCoy held her down and punched her again. Christine screamed for help. McCoy then grabbed Christine and her eight-year-old son and forced them into a car, and Christine struggled. Christine's young son hit McCoy in the back with some keys and screamed, " 'Help my mom' " or " 'He is going to kill me. Help my mom.' " McCoy picked up the child and dumped him in a nearby trash can, which flipped over. The child attempted to run away, but McCoy grabbed him and placed him back inside the vehicle.

Inside the car, McCoy continued to hit Christine. McCoy tried, but failed, to start the car. Bystanders called 9-1-1, and one of them yelled that police had been summoned. Christine exited the car, grabbed her son, and walked away. McCoy left the scene in the opposite direction.

Christine was treated by emergency personnel approximately two blocks from the scene of the assault. She had a black eye, a bloody lip, and a two-inch laceration on her hairline, which was bleeding. She was shaking and appeared confused. She did not appear to be under the influence of alcohol or drugs. She was transported to a local hospital for treatment.

2

McCoy's driver's license, which was issued on January 6, 2011, listed his residence address as an apartment on South Pacific Avenue in San Pedro. Christine's driver's license listed the same address. When Detective Teresa Dougherty of the Los Angeles Police Department conducted a telephone interview with McCoy on August 22, 2011, he denied hitting Christine. McCoy told Dougherty that he lived at the South Pacific Avenue address, confirmed that he and Christine were living together, and stated that "the relationship he had with [Christine] was on and off" or "on again; off again." On November 8, 2011, Dougherty went to the South Pacific Avenue address and spoke with Christine there.

b. *Defense evidence.*

Christine testified for the defense, as follows.[1] On the date of the incident, she had had a couple of drinks before going home after work and asked McCoy to drive her and her son to a taco stand. After they ordered tacos, she changed her mind about having McCoy drive her car. She and McCoy then argued over who would drive, and engaged in a "tug-of-war" over the car keys. During the struggle, she fell and hit her head, causing a cut on her forehead. McCoy did not push or hit her, nor did he put her son in a trash can. She and McCoy were living together at the time of the incident, but were not, at that point, in a romantic relationship. They had previously been in a romantic, sexual relationship. She was unsure when their romantic relationship ceased, but it was "[p]robably months before" June of 2011. She had no contact with McCoy after the incident.

A long-time friend of Christine's picked her up from the hospital after the incident. Christine did not have a black eye at the time. She had dark circles around her eyes, but that was her typical appearance. Christine and McCoy had been living together for more than a year.

---

[1] Prior to trial, the People attempted to contact Christine and subpoena her for trial, but were unsuccessful. After a pretrial Evidence Code section 402 hearing, the trial court ruled Christine's preliminary hearing testimony was inadmissible because the People had failed to exercise reasonable diligence to locate her.

c. *People's rebuttal.*

When being treated near the scene of the incident and at the hospital, Christine told authorities that she and McCoy had argued. He had become enraged and struck and shoved her, causing her to fall backwards and lose consciousness.

2. *Procedure.*

A jury found McCoy guilty of inflicting corporal injury upon a cohabitant or former cohabitant (Pen. Code, § 273.5, subd. (a));[2] misdemeanor cruelty to a child by inflicting injury (§ 273a, subd. (b)); and assault by means likely to produce great bodily injury (§ 245, former subd. (a)(1)). In a bifurcated proceeding, the trial court found McCoy had suffered two prior "strike" convictions (§§ 667, subds. (b)-(i)), 1170.12, subds. (a)-(d)) and had served eight prior prison terms within the meaning of section 667.5, subdivision (b). It sentenced him to a term of 16 years in prison and imposed a restitution fine, a suspended parole restitution fine, a court security fee, and a criminal conviction assessment. McCoy appeals.

DISCUSSION

1. *The evidence was sufficient to prove infliction of corporal injury upon a cohabitant.*

At the close of the People's case-in-chief, McCoy moved for a judgment of acquittal under section 1118.1 without specifying a particular evidentiary deficiency. The trial court denied the motion, finding the evidence "overwhelming." McCoy argues that this was error, because the People presented insufficient evidence to establish the element of cohabitation. We disagree.

When determining whether the evidence was sufficient to sustain a criminal conviction, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30

---

[2]    All further undesignated statutory references are to the Penal Code.

4

Cal.4th 43, 66; *People v. Houston* (2012) 54 Cal.4th 1186, 1215; *People v. Elliott* (2012) 53 Cal.4th 535, 585.)  We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence.  (*People v. Medina* (2009) 46 Cal.4th 913, 919.)  Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies this same standard.[3]  (*People v. Whalen* (2013) 56 Cal.4th 1, 55.)  When the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point.  (*Ibid.*; *People v. Cole* (2004) 33 Cal.4th 1158, 1213.)  We independently review a trial court's ruling under section 1118.1.  (*Whalen*, at p. 55.)

Section 273.5, subdivision (a) provides in pertinent part that any person who willfully inflicts "corporal injury resulting in a traumatic condition" upon a "cohabitant" or "former cohabitant" is guilty of a felony.  To establish a violation of section 273.5, the People must prove the defendant, at the time of the attack, was the current or former spouse or cohabitant of the victim or the parent of the victim's child.  "Cohabitation" is defined as unrelated persons "living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy."  (*People v. Holifield* (1988) 205 Cal.App.3d 993, 1000; *People v. Belton* (2008) 168 Cal.App.4th 432, 438; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1333.)  A " 'platonic, rooming-

---

[3]     Section 1118.1 provides in pertinent part:  "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.  If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

house arrangement' " is not enough. (*Belton*, at p. 438; *Holifield*, at p. 999.) "Cohabitation" has been broadly interpreted and does not require evidence of a "quasi-marital" relationship or a sexual relationship. (*Belton*, at p. 437; *Moore*, at p. 1333; *People v. Ballard* (1988) 203 Cal.App.3d 311, 319.) The defendant and the victim need not live together continuously to qualify as cohabitants within the meaning of section 273.5. "The element of 'permanence' in the definition refers only to the underlying 'substantial relationship,' not to the actual living arrangement." (*Moore*, at p. 1334; *People v. Taylor* (2004) 118 Cal.App.4th 11, 18.) "Permanence does not require exclusivity in either the relationship or the living arrangement." (*Taylor*, at p. 19.) Cohabitation can be found even in "unstable or transitory" living conditions. (*Ibid*.; *Belton*, at p. 438.)

Here, the evidence presented during the People's case-in-chief was sufficient to establish that at the time of the assault, Christine and McCoy had been living together in a substantial relationship characterized by permanence and amorous intimacy. McCoy's and Christine's driver's licenses showed the same residence address. McCoy's driver's license was issued approximately five months before the attack. When Detective Dougherty interviewed McCoy on August 22, 2011, approximately two months after the attack, McCoy confirmed he and Christine were still living at the South Pacific Avenue address. Thus, there was evidence McCoy had been living with the victim for at least five months at the time of the attack. This period of time was more than sufficient to show the requisite permanence of the relationship. (See, e.g., *People v. Holifield, supra,* 205 Cal.App.3d at p. 1002 [evidence sufficient where, inter alia, defendant and victim lived together for over half of the three months preceding the assault]; *People v. Taylor, supra,* 118 Cal.App.4th at pp. 18-19 [victim and defendant dated for five months preceding the assault].)

McCoy told Detective Dougherty that he had an "on again, off again" relationship with Christine. From this statement, coupled with the evidence the pair lived together, the jury could reasonably have inferred the relationship was of an amorous nature, rather than purely platonic. In common parlance, the phrase "on again, off again" is frequently

6

used to describe amorous, dating, or sexual relationships. (See *People v. Holifield, supra,* 205 Cal.App.3d at p. 995 [evidence of cohabitation sufficient where, inter alia, the victim and the defendant had "been seeing each other off and on for four years"].) Indeed, the term has often been so used in California appellate opinions. (See, e.g., *People v. Lightsey* (2012) 54 Cal.4th 668, 677; *People v. Heard* (2003) 31 Cal.4th 946, 951; *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1253; *In re Aguilar* (2008) 168 Cal.App.4th 1479, 1483; *People v. Jaspar* (2002) 98 Cal.App.4th 99, 102; *People v. Gadlin* (2000) 78 Cal.App.4th 587, 590.) While perhaps not overwhelming, the evidence was sufficient to prove the cohabitation element. (See generally *Holifield*, at p. 1002; *People v. Belton, supra,* 168 Cal.App.4th at pp. 438-439*; People v. Taylor, supra,* 118 Cal.App.4th at p. 19; *People v. Ballard, supra,* 203 Cal.App.3d at p. 319; *People v. Moore, supra,* 44 Cal.App.4th at p. 1335.)

McCoy argues that there was no evidence he and Christine engaged in sexual relations, "identified each other as a boyfriend or girlfriend," shared a bedroom, or shared any resources or possessions. However, neither a sexual relationship nor the sharing of resources or costs is necessary to prove cohabitation. (*People v. Ballard, supra,* 203 Cal.App.3d at p. 319; *People v. Holifield, supra,* 205 Cal.App.3d at p. 1002.) McCoy also contends that the phrase " 'on again, off again' " relationship does not unequivocally imply an amorous connection. Perhaps not; but in the context of the evidence as a whole, jurors could reasonably have understood the phrase to imply an amorous, dating relationship. Because the evidence produced in the People's case was sufficient to prove the cohabitation element, the trial court did not err by denying the section 1118.1 motion.

2. *Correction of the abstract of judgment.*

McCoy was convicted in count 3 of assault by means likely to produce great bodily injury, section 245, former subdivision (a)(1). The abstract of judgment, while listing the correct Penal Code section, erroneously states that McCoy was convicted in count 3 of assault with a deadly weapon. Although neither party raises the issue, we order this clerical error corrected to avoid potential confusion in the future. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

DISPOSITION

The clerk of the superior court is directed to correct the abstract of judgment to reflect that McCoy was convicted in count 3 of assault by means likely to produce great bodily injury, not assault with a deadly weapon.  The clerk is directed to forward a copy of the corrected abstract of judgment to the Department of Corrections.  In all other respects, the judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:


KLEIN, P. J.



CROSKEY, J.



8