# IN THE COURT OF APPEALS OF IOWA

No. 18-0685
Filed April 17, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANTHONY GOMEZ,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Crystal S. Cronk, District Associate Judge.

Anthony Gomez appeals several criminal convictions and the imposition of consecutive sentences.

**CONVICTIONS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

**I.        Background Facts and Proceedings**

Upon the evidence presented at trial, a rational jury could make the following factual findings.  Anthony Gomez and M.M. met in 2013 in an online chatroom.  At the time, M.M. lived in Michigan and Gomez lived in Iowa.  They began a romantic relationship a month or so later.  They met for the first time in person roughly two years later, when Gomez visited M.M. in Michigan.  The relationship continued, and in 2017, M.M. made plans to move to Iowa to live with Gomez.  Days before the move, M.M.'s "last hoorah" involved going to a concert in Michigan with one of her best friends.  This angered Gomez because he did not give M.M. permission to attend the concert.

M.M. traveled to Iowa to begin living with Gomez on April 3.  M.M. arrived at Gomez's Ottumwa home at around 5:00 or 6:00 p.m., after which she spent around ten minutes text messaging Gomez because she did not know if he was home.  Gomez initially did not respond to the text messages, but he eventually opened his garage, in which he was sitting in his car.  M.M. approached, but Gomez did not want to talk to M.M.  Gomez directed M.M. to take her stuff inside the home.  M.M. moved her things into the home, visited a nearby fast food restaurant, and then returned to the home, where she made herself a makeshift bed[1] and laid down.

Gomez was in and out of the home throughout the night.  There continued to be limited conversation between the two.  At some point, Gomez returned to the

---

[1] Gomez's home did not have a bed at the time.

home for the last time and started watching television.  Shortly after, M.M. awoke and attempted to speak with Gomez; Gomez began hitting M.M. in the head and face multiple times with his fists.  M.M. fell to the ground, upon which Gomez began strangling her.  M.M. began to lose consciousness.  Gomez eventually discontinued strangling M.M., upon which he told M.M. to bend over and not move. Gomez then pulled down M.M.'s leggings and commenced anal intercourse with her.  M.M. advised Gomez in prior discussions that anal intercourse was "not an interest of" hers.

After Gomez finished, he continued attacking M.M.  M.M. blacked out, but she made it outside of the home at some point and made contact with a neighbor. Law enforcement was ultimately contacted and M.M. was transported to the hospital.  M.M. did not immediately report the sexual assault to police officers, but she did report it to medical personnel at the hospital, where she was examined and a rape kit was administered.  A small tear to M.M.'s anus was discovered. Photographs taken of M.M. depict facial injuries including a bloody nose and swollen eyes; bruising to the face, neck, body, legs, and arms; and some scratches and abrasions to various areas.  M.M. also suffered oral injuries, due to the presence of braces in her mouth.  She developed a black eye and was diagnosed with a concussion.

On April 4, police executed a search warrant on Gomez's home.  During the search, police were able to locate all of M.M.'s property with the exception of her cellular phone and car keys.  M.M. likewise testified when she returned to Gomez's home to retrieve her belongings, her car keys and cell phone were missing.  The only two people with knowledge of the cell phone's password were M.M. and

Gomez. The evidence shows Gomez sent text messages from M.M.'s phone in the afternoon hours of April 4. Gomez was apprehended on April 5 at another location in Ottumwa. M.M.'s cell phone was found at the location where Gomez was apprehended.

Gomez was charged by trial information with: (1) third-degree sexual abuse, (2) willful injury causing bodily injury, (3) domestic abuse assault causing bodily injury by impeding breathing or circulation, (4) domestic abuse assault causing bodily injury or mental illness, and (5) third-degree theft. A jury found him guilty as charged.[2] The court sentenced Gomez to, among other things, imprisonment in the amount of ten years for count one, five years each for counts two and three, one year for count four, and two years for count five. The court ordered counts one and two to be served consecutively with the remaining counts to be served concurrently.

Gomez appeals, challenging his convictions and the imposition of consecutive sentences. Specifically, he argues (1) his counsel rendered ineffective assistance in failing to (a) request definitional jury instructions in relation to the willful-injury charge and the two domestic-abuse-assault charges and (b) object to hearsay testimony relative to the theft charge; (2) the evidence was insufficient to support all charges;[3] and (3) the court improperly failed to provide reasons for imposing consecutive sentences.

---

[2] The jury specifically found counts three and four stemmed from separate and distinct acts.

[3] Gomez alternatively forwards a skeletal, largely un-substantive argument that counsel was ineffective in failing to move for a new trial on weight-of-the-evidence grounds. However, we find Gomez's development of this claim in his appellate brief to be insufficient to facilitate our review. As such, we preserve the claim for postconviction-relief proceedings. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018).

## II.     Ineffective Assistance of Counsel

We begin with Gomez's claims of ineffective assistance of counsel. Such claims are immune from error-preservation defects. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). We review ineffective-assistance-of-counsel claims de novo. *State v. Albright*, ___ N.W.2d ___, ___, 2019 WL 1302384, at *4 (Iowa 2019). Gomez "must establish by a preponderance of the evidence that '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018) (quoting *State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017)); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

### A.     Jury Instructions

#### 1.     *Domestic abuse assault*

Gomez argues his counsel was ineffective in failing to object to the marshalling instructions for the two domestic-abuse-assault charges. Gomez does not challenge his attorney's competence in relation to the elementary makeup of these instructions. Instead, he argues his counsel was ineffective in failing to request an instruction clarifying the final element of each charge, which provided, "The act occurred between persons who are the parents of the same minor child and/or a family member or intimate partner residing with the defendant." Gomez argues his counsel should have requested an instruction defining "family or household members," which is statutorily defined in relevant part as "persons

cohabiting," *see* Iowa Code § 236.2(4)(a) (2017), in accordance with our supreme court's decision in *State v. Kellogg*, 542 N.W.2d 514, 516–18 (Iowa 1996). He maintains that, without such an instruction, "the jury was able to find domestic abuse based only on the fact that Gomez and M.M. were residing in the same home."

The State argues counsel's failure to request an instruction did not result in prejudice. The State points out the instruction did not use the phrase "household members," *see* Iowa Code § 236.2(2)(a), which the State concedes would be "ambiguous under these circumstances." However, the instruction did use the phrase "family member," which the Iowa Code dictates is synonymous with "household member." *See id.* § 232.6(4)(a). Conceding that portion of the instruction would be ambiguous, the State argues the instructional term "intimate partner residing with the defendant" "is much more definite and provided proper guidance to the jury" and, in any event, the "evidence of cohabitation . . . was overwhelming."

However, the language "intimate partner residing with the defendant" contained in the instruction only apprised the jury of the first of the six nonexclusive factors for cohabitation under *Kellogg*.[4] We therefore disagree with the State that

---

[4] The *Kellogg* court directed that juries consider six nonexclusive factors in determining "whether a couple is cohabiting under the umbrella of chapter 236." 542 N.W.2d at 518. Those factors include:

    (1) Sexual relations between the parties while sharing the same living quarters.
    (2) Sharing of income or expenses.
    (3) Joint use or ownership of property.
    (4) Whether the parties hold themselves out as husband and wife.
    (5) The continuity of the relationship.
    (6) The length of the relationship.

*Id.*

the language "provided proper guidance to the jury," as it did not give the jury the opportunity to consider all of the factors. That leaves us with the concededly vague "family member" language.[5] We disagree with the State that the evidence of cohabitation was "overwhelming" here. Under the *Kellogg* factors, we find the evidence rather underwhelming to support a finding of cohabitation; or, at the very most, a toss-up.[6] As such, we find an instructional definition would have aided Gomez and, consequently, counsel failed to perform an essential duty in not requesting it. *See State v. Virgil*, 895 N.W.2d 873, 879–82 (Iowa 2017) (stating, among other things, "A lawyer should be aware of the *Kellogg* factors and the readily available definitional instruction").

We turn to prejudice. A defendant establishes prejudice in the ineffective-assistance-of-counsel context when he or she shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Krogmann v. State*, 914 N.W.2d 293, 313 (Iowa 2018) (quoting *Strickland*, 466 U.S. at 694). Upon our de novo review of the record, and given our finding that the evidence concerning cohabitation was at most symmetrical, we find a reasonable probability that, had the jury been instructed on the *Kellogg* factors, the outcome of the verdicts on the domestic-abuse-assault charges would have been different. *Cf. Virgil*, 895 N.W.2d at 883. As such, we

---

[5] It is undisputed Gomez and M.M. are not parents of the same minor child.

[6] Other than the incident in question, there was no evidence the couple engaged in sexual relations while sharing the same living quarters. There was also no evidence concerning the sharing of income or expenses. There was no evidence of joint ownership of property, and the evidence shows joint use of property was for less than one day. There was no evidence that they held themselves out as husband and wife. The only evidence concerning cohabitation was that the couple was in a continuous, although long-distance, relationship for four years.

vacate the sentences and reverse judgment and conviction on counts three and four and remand for a new trial on those charges.

### 2.    *Willful injury*

As to the willful-injury charge, the jury was instructed the State must prove Gomez "specifically intended to cause a serious injury to M.M." Gomez argues his counsel was ineffective in failing to request an instruction defining "serious injury." "Serious injury" is statutorily defined, in relevant part, as any of the following:

> (a) Disabling mental illness.
> (b) Bodily injury which does any of the following:
> 　　(1) Creates a substantial risk of death.
> 　　(2) Causes serious permanent disfigurement.
> 　　(3) Causes protracted loss or impairment of the
> function of any bodily member or organ.

Iowa Code § 702.18(1)(a)–(b).

Again, the State argues Gomez cannot establish the prejudice prong of his ineffective-assistance claim. The State seems to take the position that Gomez was not prejudiced because the evidence was sufficient to support a finding of intent to cause serious injury, regardless of whether the jury was instructed on the legal definition of serious injury. Upon our de novo review of the record, while acknowledging "[d]efense counsel's failure to request a definitional instruction may be prejudicial even if the evidence is sufficient to support the conviction," *Virgil*, 895 N.W.2d at 882–83, we are inclined to agree with the State that Gomez suffered no prejudice from counsel's failure to request an instruction defining serious injury. Upon the evidence presented, we find no "reasonable probability that . . . the result of the proceeding would have been different" had the jury been instructed on the definition of serious injury. *See Krogmann*, 914 N.W.2d at 313. As such, we find

counsel was not ineffective in this respect, and we affirm the willful-injury conviction.

B. Hearsay Evidence

Gomez argues his counsel rendered ineffective assistance in failing to object to hearsay evidence concerning the theft charge. He specifically complains of his counsel's failure to object to the following dialogue between the prosecutor and a police investigator:

> Q. What about that phone makes you believe it belonged to [M.M.]? A. [M.M.] described her iPhone we were unable to locate that had a gold back. The phone we located has a gold back. The phone was located inside the residence where Mr. Gomez was located, and also the subjects that stayed in that room believed it also belonged to Mr. Gomez. They were unaware of where the phone came from.

He complains the testimony should have been excluded because "it was being offered to prove the essential element of the theft charge that he was in the possession of M.M.['s] cell phone." Without deciding whether the testimony was hearsay, we conclude Gomez suffered no prejudice from his counsel's failure to object because the evidence was cumulative. *See McNeal*, 897 N.W.2d at 708–09. Even ignoring the testimony, there was ample other evidence suggesting Gomez was in the possession of the phone. M.M. specifically testified her gold iPhone was missing from Gomez's home when she returned to retrieve her belongings. The investigator additionally testified M.M.'s phone was not present in the home at the time of the execution of the search warrant. The phone was found where Gomez was apprehended. Finally, the only two people with knowledge of the cell phone's password were M.M. and Gomez, and the evidence shows Gomez sent text messages from M.M.'s phone in the afternoon hours of

April 4. We find no reasonable probability of a different outcome had counsel objected.

### C. Cumulative Error

Finally, Gomez claims "the cumulative effect of counsel's errors" in the foregoing respects "undermines confidence in the outcome of the jury trial" and he should therefore be granted a new trial. "[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong of *Strickland*." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Where, as here, "the court is assessing multiple claims and assumes without deciding counsel breached an essential duty," as we have done in relation to Gomez's willful-injury instruction and hearsay claim, "then the reviewing court should consider whether the assumed breaches, cumulatively, resulted in *Strickland* prejudice." *State v. Jones*, No. 16-1828 2018 WL 1858296, at *7 (Iowa Ct. App. Apr. 18, 2018); *accord Clay*, 824 N.W.2d at 501–02.

Upon our de novo review, the assumed breaches, cumulatively, do not undermine our confidence in the outcome. *See Strickland*, 466 U.S. at 694. We therefore reject Gomez's claim of cumulative error.

## III. Sufficiency of the Evidence

Following the State's case-in-chief, Gomez moved for judgment of acquittal as to each count. The district court, viewing the evidence in the light most favorable to the State, denied the motion. Although Gomez did not present any evidence, he renewed his motion after resting, which the court also denied. On appeal, Gomez argues the State presented insufficient evidence to support his

convictions and the court therefore erred in denying his motions for judgment of acquittal.

Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the [factfinder]." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State challenges error preservation on a number of Gomez's claims on appeal. We choose to bypass the State's error-preservation concerns, *see, e.g.,*

*State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999), and will consider the sufficiency of the evidence underlying each of Gomez's remaining convictions.

A.     Third-Degree Sexual Abuse

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Gomez does not challenge the jury instruction employed for the charge of third-degree sexual abuse. As such, the instruction serves as the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). The jury was instructed the State was required to prove the following elements for sexual abuse in the third degree:

> (1) . . . [T]he defendant performed a sex act with M.M.
> (2) The defendant performed the sex act by force or against the will of M.M.

The jury was further instructed as follows:

> The term "sex act" as used in these instructions means any sexual contact:
> (1) By penetration of the penis into the anus.
> (2) Between the genitals of one person and the genitals or anus of another.
> You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.

Viewing the evidence in a light most favorable to the State and verdict, as we must, we find the evidence was sufficient to convince a rational jury that Gomez is guilty of third-degree sexual abuse beyond a reasonable doubt. The evidence is largely undisputed that Gomez engaged in a sex act, anal intercourse, with M.M. The record also includes substantial evidence the act was by force or against the will of M.M.; M.M. had previously advised Gomez of her disinterest in this type of

intercourse, and Gomez perpetrated the act amid a physical assault. We affirm Gomez's conviction of sexual abuse in the third degree.

B.     Willful Injury Causing Bodily Injury

Gomez was convicted of willful injury causing bodily injury in violation of Iowa Code section 708.4(2). Although Gomez complains of his counsel's failure to request a definitional instruction on serious injury, discussed above, he does not challenge the elementary makeup of the marshalling instruction for willful injury itself. The instruction likewise serves as the law of the case for purposes of reviewing the sufficiency of the evidence. *See id.* The jury was instructed the State was required to prove the following elements:

> (1) . . . [T]he defendant did unlawfully commit an act against [M.M].
> (2) The defendant specifically intended to cause a serious injury to [M.M].
> (3) The defendant's acts caused a bodily injury to [M.M.] as defined in Instruction No. 22.

Instruction 22 defined bodily injury as "physical pain, illness, or any impairment of physical condition."

Gomez only challenges the sufficiency of the evidence as to the second element—that he specifically intended to cause a serious injury. Again, viewing the evidence in a light most favorable to the State and verdict, we find the evidence was sufficient to convince a rational jury that Gomez specifically intended to cause a serious injury to M.M. Gomez struck M.M. in the head and face several times, strangled her, and caused other injuries to the remainder of her body. The jury was instructed it may "conclude a person intends the natural results of his acts." *Accord State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004) ("[A]n actor will ordinarily

be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act."). The natural and probable consequence of striking a person in the head or face, or strangling them, could be the infliction of a serious injury within the meaning of the Iowa Code. *See* Iowa Code § 702.18(1)(a)–(b) (defining serious injury). Therefore, we believe a jury question was engendered on the issue, and the evidence presented was sufficient to show Gomez intended to cause a serious injury as defined by the statute. *See State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981). We affirm Gomez's conviction of willful injury causing bodily injury.

C. Third-Degree Theft

Finally, Gomez challenges the sufficiency of the evidence underlying his conviction of third-degree theft. On this count, the jury was instructed the State must prove the following elements:

> (1) . . . [T]he defendant took possession or control of the property of [M.M.]
> (2) The defendant did so with the intent to deprive [M.M.] of the property.
> (3) The property, at the time of the taking, belonged to [M.M.]
> (4) The value of the property exceeds $500 but not $1,000.

Gomez only challenges the State's establishment of the first two elements. "Possession or control" was defined to include "secur[ing] dominion or exert[ing] control over an object." As discussed above, there is ample evidence in the record to allow a jury to rationally conclude Gomez took possession or control of M.M.'s phone. Because the intent element "is seldom capable of being established without direct evidence," juries can consider "the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those

facts and circumstances" in ascertaining the defendant's intent. *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Viewing the evidence in the light most favorable to the State, we find the evidence to be sufficient to allow a rational jury to conclude Gomez intended to deprive M.M. of her phone, and the district court was therefore correct in overruling Gomez's motion for judgment of acquittal. Consequently, we affirm his conviction of third-degree theft.

## IV. Sentencing

Finally, Gomez argues the court abused its discretion when it failed to disclose the reasons for imposing consecutive sentences on counts one and two. "Iowa Rule of Criminal Procedure 2.23(3)(d) requires the district court to 'state on the record its reason for selecting the particular sentence.'" *State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016). The rule "applies to the district court's decision to impose consecutive sentences." *Id.* "Although the reasons need not be detailed, at least a cursory explanation must be provided to allow appellate review of the trial court's discretionary action." *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000).

At the sentencing hearing, after the court announced its decision as to Gomez's sentence on each count, the court stated:

> It is further ordered that the sentences imposed under Count I of ten years, and the sentence imposed in Count II shall run consecutively. All other counts shall run concurrently.
> Mr. Gomez, I have selected this particular sentence for you after considering your age, your prior criminal record, employment, family circumstances, nature of the offense committed, and harm to the victim. Whether a weapon or force was used in the commission of the offense, your need for rehabilitation and potential for rehabilitation, the necessity of protecting the community from further offenses by you and others.

> Specifically the Court notes that the nature of this offense was quite violent. You have a criminal history indicating assaultive and violent behavior in the past. That seems to have continued to escalate in your circumstances and resulted in a pretty horrific crime being committed for which you're being sentenced today. I think it's appropriate to have those two sentences run consecutively.

It is true that, in imposing consecutive sentences, a sentencing "court may rely on the same reasons for imposing a sentence of incarceration." *Hill*, 878 N.W.2d at 275. However, appellate courts are not allowed "to infer the same reasons applied as part of an overall sentencing scheme," and, as such, "[s]entencing courts should also explicitly state the reasons for imposing a consecutive sentence." *Id.* Here, the sentencing court gave reasons for its overall sentencing scheme, but did not explicitly state the reasons for imposing consecutive sentences on counts one and two. Because the record is insufficient to allow appellate review of the district court's discretionary action in imposing consecutive sentences on counts one and two, we vacate only the portion of the sentencing order imposing consecutive sentences, and we remand for the purpose of determining whether the sentences should run consecutively or concurrently. *See id.* at 274–75; *State v. Jason*, 779 N.W.2d 66, 77 (Iowa Ct. App. 2009). "On remand, the district court should determine whether the sentences should run consecutive or concurrent and provide reasons for its decision." *State v. Jensen*, No. 15-2172, 2016 WL 5931033, at *4 (Iowa Ct. App. Oct. 12, 2016).

## V.    Conclusion

We find defense counsel rendered ineffective assistance in failing to request a definitional jury instruction relative to the final element of each of the domestic-abuse-assault charges. As such, we vacate the sentences and reverse judgment

and conviction on counts three and four and remand for a new trial on those charges. We find Gomez was not prejudiced by counsel's failures to request a jury instruction defining serious injury in relation to the willful-injury charge or object to alleged hearsay evidence in relation to the theft charge. We reject Gomez's claim of cumulative error. We find the evidence sufficient to support Gomez's convictions of third-degree sexual abuse, willful injury causing bodily injury, and third-degree theft. We find the record is insufficient to allow appellate review of the district court's discretionary action in imposing consecutive sentences on counts one and two. As such, we vacate only the portion of the sentencing order imposing consecutive sentences, and we remand the matter to the district court. On remand, the district court should determine whether the sentences should run consecutively or concurrently and provide reasons for its decision. Finally, having found Gomez's ineffective-assistance argument concerning the weight of the evidence insufficient to facilitate our review, we preserve that claim for postconviction-relief proceedings.

**CONVICTIONS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**